JAMES SCOTT, Appellee, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Appeal:** REVIEW OF INSTRUCTIONS: MOTION FOR NEW TRIAL. Any matter which has been passed upon by the trial court and the ruling properly excepted to may be reviewed on appeal without a motion for a new trial. So that a motion for new trial is not essential to a review of instructions given by the court, as the same are of necessity considered, determined and passed upon by the court in preparing and reading them to the jury. The statutes concerning motions for new trial have relation to those matters which cannot otherwise be called to the attention and passed upon by the trial court.

**Evidence:** MORTALITY TABLES: ADMISSIBILITY. Mortality tables are admissible in personal injury actions for the purpose of aiding the the jury in arriving at the probable expectancy of the injured

party, in view of all the conditions surrounding the life of the particular individual, both before and after the injury; and are applicable to cases where the injuries are such that in all probability the life of the injured person will be materially shortened, although not of the same probative force as where the nature of the injury is not such as to affect longevity, or where death occurs.

Same: INSTRUCTIONS. Where mortality tables are introduced in evidence the jury should be carefully instructed as to the effect to be given such evidence, that they may not be misled concerning its value and weight. Thus where plaintiff suffered injuries likely to shorten his life, the court should have clearly directed the jury that future damages were recoverable only for such length of time as the plaintiff was likely to live in his injured condition, rather than have authorized recovery for the length of time plaintiff would probably have lived if uninjured, and should have limited consideration of the mortality tables as evidence to that end.

Master and servant: NEGLIGENCE: ASSUMPTION OF RISKS: INSTRUCTIONS. A servant assumes the ordinary risks incident to his employment, but the extraordinary risks created or enhanced by the employer's negligence are not assumed, unless so obvious that he should have known of them, and in that event he is held to have had knowledge; so that an instruction submitting plaintiff's assumption of certain risks arising from defendant's alleged negligence, omitting the element of what he might have known in the exercise of reasonable care was not erroneous, as applied to the facts in this case. And even though he knew of the defective conditions it would not necessarily follow that he appreciated the danger.

*Appeal from Guthrie District Court.*—HON. J. H. APPELGATE, Judge.

THURSDAY, JUNE 5, 1913.

THIS was an action to recover damages for personal injury. There was a verdict and judgment for plaintiff. Defendant appeals.—*Reversed.*

*Foster & Foster, J. L. Parrish* and *Robert J. Bannister,* for appellant.

*J. D. Brown, Wade, Dutcher & Davis* and *M. J. Halligan,* for appellee.

PRESTON, J.—The plaintiff, prior to his injury, was a healthy man, aged twenty-eight years. He entered the railway service in 1907, working first in the roundhouse, and then as fireman on a switch engine, in all about one year. In April, 1910, he re-entered the service of defendant as fireman, first as extra fireman, and for about a month before his injury he had a regular run as fireman on a freight train. As we understand the record, plaintiff had been going over the track at the place where he was hurt at intervals for some months prior to his injury, the last time going west on October 14, 1910. Going west, the track was on an upgrade at this point. The company had been repairing the track at this point for some time prior to the injury.

The evidence tends to show that on the morning of October 16, 1910, plaintiff was thrown from the tender and seriously injured; that he is paralyzed below the waistline, and is practically helpless. The track at this point was being repaired or rebuilt, and had been skeletonized in order to permit the roadbed being ballasted, which was being done with rock. This had been partially completed; defendant claims substantially so. Plaintiff claims that he was thrown off when the train was on the curve. He says he did not know what the track was, whether skeletonized or ballasted, excepting the impression he had of it as he was lying by the track after being thrown off the tender. It was downgrade. The train was going about fifteen miles an hour, as plaintiff thinks, though the engineer thinks fifteen or twenty. Plaintiff says he knew how the tenders were loaded with coal; knew there was no railing around the top of the tank; that the only way to measure the water in the tank was to go back to the manhole and measure it by sticking something down in the water; that in leaving a curve the tank rights up and makes a roll, and knew that if he fell off the train he was likely to be injured. Plaintiff says that as the train was approaching the town of Montrose, Kan., and when about

two miles west of the town, he was ordered by the engineer to go back over the coal in the tender to the manhole in the rear to measure the water; that while in the performance of this duty he was thrown from the tender to the ground.

The petition charges as negligence that the tender had no appliance for measuring the water without going back over the coal while the engine was in operation; that no water gauge or other appliance was provided by which the amount of water could be determined without going over the coal to measure it; that there were no guard rails or other appliances along the sides of the tender; that the coal was piled high and in an uneven manner, making an unsafe place over which to pass; that plaintiff was ordered by the engineer to go upon said tender while the train was running at a high and dangerous rate of speed, over a rough and uneven track; that the roadbed and track at the point in question were out of repair.

Defendant answered by general denial, and further alleged that the plaintiff was an experienced fireman in the service of defendant, and had knowledge of the construction and equipment of its engines and tenders, and particularly the engine and tender upon which he was riding at the time he received the injury complained of, and knew that the said tender was not equipped with any water gauge for measuring water in the tender, and knew that there was no guard rail on the sides of the tender, and that plaintiff had knowledge of the manner in which the coal was loaded and piled on said tender, at and prior to the time he was injured, and had knowledge of the construction and condition of the track over which he was riding; that plaintiff remained in his employment without complaint, with knowledge of all these conditions, and assumed whatever risk there was to him arising from them.

The grounds of negligence submitted to the jury by the trial court were as follows:

The acts of negligence charged by plaintiff against the defendant, and which are submitted to you, are: That the engineer in charge of the engine on which plaintiff was at the time employed ordered plaintiff to measure the water in the tender attached to said engine, and that the negligence of the defendant consisted (1) in ordering plaintiff to go back upon the tender piled high with coal and without handholds, or other supports, when the train was running at a high rate of speed, over a rough track and around a curve; (2) in running said train at a high and dangerous rate of speed over a rough and uneven track, and upon a curve, while the plaintiff was in the performance of his duty measuring the water when the tender was loaded with coal, piled high, and without handholds, guards or other supports; (3) in failing to maintain the track in a reasonably safe and even condition for the use of plaintiff at said curve in performing his duty of measuring said water upon said tender, loaded high with coal, and without guards, handholds, or other supports.

The action was brought under the Federal Employers' Liability Act; the petition alleged and the evidence tended to show that this train was engaged in commerce between states. There was a sharp conflict in the evidence as to some of the matters in issue, so that it was a case for the jury. This is admitted by appellant in argument.

There are three points relied upon by appellant for a reversal: First, that the court erred in admitting in evidence the life tables over defendant's objection; second, that the instructions as to the life tables and the measure of damages are erroneous; and, third, that the jury were not properly instructed in regard to assumption of risk.

Appellee contends that the instructions cannot be considered by this court, for the reason that the attention of the trial court was not called to the alleged errors therein, in a motion for new trial. There was no motion for a new trial, but the instructions were properly excepted to.

I. It is perhaps not necessary to a determination of this appeal to decide this point, but it has been argued and will

be noticed.   It is admitted by appellee that a motion for a
new trial is not essential to an appeal, but it
1. APPEAL: re-
view of in-       is said that under the statutes of this state a
structions:
motion for       question as to the form of instructions sub-
new trial.
mitted by the court must first be presented
to the lower court before it can be reviewed upon appeal;
that this applies to instructions given; that it is not a ques-
tion of refusal of the court to give an instruction asked.  We
think this question has heretofore been determined, and we
feel safe in saying that it has been the understanding of the
profession and of the courts in this state for many years
that any matter passed upon by the court during the trial,
properly excepted to, may be reviewed by this court, without
a motion for a new trial.  If this is not so, then every matter
complained of as error and excepted to must be included in
the motion for new trial.  The trial court could grant a new
trial for error in ruling on objections to evidence, if pre-
sented in a motion for new trial, but a motion is not neces-
sary for that purpose.  In such a case the matter would have
been presented to the court and passed upon when the objec-
tion was made.  When an instruction is asked and refused
the matter is presented to the court and passed upon.  So it
is when the court gives its own instructions; they are con-
sidered, determined, and passed upon by the court in writing
them, and in reading them to the jury.  The giving of an
erroneous statement of the law to the jury is in itself an
affirmative error.

Section 3707 of the Code, in the chapter relating to trial
and. judgment, provides:   "All instructions requested or
given shall be filed by the clerk and be a part of the record,
and if the giving or refusal of an instruction is excepted to,
it may be noted by the short-hand reporter, and no reason
for such exception need be given."   In the same chapter,
section 3709 provides for exceptions after verdict as follows:
"Either party may take and file exceptions to the charge
or instructions given, or to the refusal to give any instruc-

tions asked, within three days after the verdict, which shall be a part of the record, and may include the same, in a motion for a new trial, but in either case the exception shall specify the part of the charge or instruction objected to and the ground of the objection.'' It would seem from this that if the instructions given were excepted to at the time, nothing further need be done; but if not excepted to at the time, then they may be excepted to afterwards and within three days after verdict, or by motion for new trial.

Section 4105 of the Code, which is found in the Revision of 1860, provides: "A judgment or order shall not be reversed for an error which can be corrected on motion in an inferior court, until such motion has been there made and overruled.'' It has been held that the purpose of this statute was to prevent the expense and delay of appeal where the error relied upon is a mere irregularity, mistake, or omission on the part of some ministerial officer, or the court itself, which could readily be corrected in the trial court on motion. *Pigman v. Denney,* 12 Iowa, 396; *Daniels v. Claflin,* 15 Iowa, 152. Such provision applies only to such errors as, without motion, would not be called to the attention of the lower court. *Brown v. Rose,* 55 Iowa, 734.

And in *Shipley v. Reasoner,* 80 Iowa, 548, it was held that, while the Supreme Court will not consider errors that have not been called to the attention of the trial court, it will consider all questions presented to the lower court upon which there was a ruling and exception taken, when the ruling is assigned as error and presented in argument, although no motion for new trial was made.

A motion for a new trial is still required to call the court's attention to such matters as that the verdict is excessive; that there has been misconduct of the jury in arriving at their verdict, and the like, for the reason that such matters have not been and cannot be called to the attention of the court and passed upon by it in any other way.

Section 4106 of the Code was enacted after 4105, and

provides: "The Supreme Court on appeal may review and reverse any judgment or order of the superior or district court, although no motion for a new trial was made in such court." The purpose in enacting section 4106 was, no doubt, to simplify the procedure by making it unnecessary to file a motion for a new trial, for the consideration of errors based on exceptions taken at the trial. We think this statute intended to and did remove the necessity of such motion, where an exception had been taken to the action of the court below at the trial.

In *Ellis v. Leonard,* 107 Iowa, 487, there was but one assignment of error, and that was to the giving of an instruction, and the case was reversed on that ground. The court said: "The bill of exceptions, which is not denied, recites 'that to the giving of each and every of said instructions the plaintiff at the time duly excepted.' This was sufficient. . . . As the instructions were excepted to at the time they were given, there was no need for exceptions to be stated in the motion for a new trial. . . . Indeed, we have held that exceptions to instructions preserved during the course of the trial may be considered on appeal, although the motion for a new trial in which they are incorporated is stricken from the files because filed too late." The opinion then quotes what is now section 4106 of the Code. The case at bar is ruled by that case and the cases therein cited. See, also, *Clement v. Drybread,* 108 Iowa, 701; *Johnson v. Semple,* 31 Iowa, 49; *Coffin v. City of Davenport,* 26 Iowa, 515; *Hooker v. Chittenden,* 106 Iowa, 321; *Hunt v. Ry.,* 86 Iowa, 15; *Powers v. Ry.,* 143 Iowa, 427.

The authorities referred to by appellee are not in conflict with the above cases. They are, for the most part, cases where a question was sought to be raised for the first time in the Supreme Court, which is an appellate court, and for the correction of errors of law.

II. The life tables were properly admitted in evidence. It has often been so held. *Coates v. Railway,* 62 Iowa, 491;

*Ronn v. Des Moines,* 78 Iowa, 63; *Blair v. Madison Co.,* 81

2. EVIDENCE:       Iowa, 315; *Chase v. Railway,* 76 Iowa, 678;
mortality ta-
bles: admissi-   *Allen v. Railway,* 106 Iowa, 604. The argu-
bility.          ment is that they were not admissible because
plaintiff's injuries were such that in all probability his life
will be materially shortened thereby; that the life tables show
the average expectancy of well men, not of injured men. It
must be admitted that these tables would be of more aid to
the jury in some cases than others. A person may be injured
in such a way as to not shorten life, the loss of a finger
for instance. On the other hand, the injuries may be so
serious and of such a character as to necessarily shorten life
materially. If a person is killed, the question would be how
long such person would have been likely to live. This depends
more upon his prior state of health, habits, perils of employ-
ment, and other circumstances surrounding his own life than
it does upon the average expectancy of other lives, based
upon mortality tables. The tables are not to be accepted
as establishing the expectancy of the injured party, but only
as an aid in arriving at what that expectancy might be, in
view of all the conditions surrounding the particular life in
question, after, as well as before, the injury. In a death
case, as suggested, or if the injury is such as to not shorten
life, and the person was in good health, of good habits, etc.,
the life tables would be helpful. But if a person's hurts
are of such a character as to shorten life, and he is still
living at the time of the trial, the question is, How long will
he live in his injured condition? In such a case the life
tables would not be so helpful, and would perhaps be of little,
if any, value, but this would not be a reason for not admitting
them in evidence.

In regard to life tables, the instructions should carefully
guard the effect to be given them by the jury; unless this
is done, in a direct and pointed way, by the court, the jury

3. SAME: instruc-   may be misled as to the value and weight to
tions.            be attached to such evidence. It may be that
in this case the trial judge inadvertently, in the hurry of

the trial, failed to make the distinction between a case where the person is still living, and a death case, or at least may not have clearly expressed himself as he intended.

In this connection, there is another matter we shall mention. It has not been raised, and we have not had the benefit of argument on the point; therefore do not determine it, but suggest it only in view of another trial, that the matter may be considered by the court and counsel. Error may be avoided at this point if another appeal is had. The suggestion is whether, under the facts of this case, in offering the life tables in evidence, the expectancy should be based on plaintiff's age at the time of his injury, or his age at the time of the trial. Had plaintiff been killed at the time of his injury, his expectancy would, no doubt, be based on his age at that time. But he has now lived more than two and one-half years; that much of his expectancy is certain, and the damages in pain and suffering, loss of earnings, nursing, care, etc., may be ascertained with more certainty than if based entirely on future expectancy; and in addition to this there might be danger of the jury allowing a double recovery for such elapsed time if his age at the date of his injury is taken. The rule applicable here might not apply to all cases. As bearing somewhat on this matter, see the discussion in *Breen v. Railway,* 159 Iowa, 537.

III.   Instruction No. 19 is as follows:

What is known as the Carlisle Life Tables have been introduced on the trial of this case to show the expectancy of life of a man of the age of plaintiff at the time he received the injury of which he complains. It is proper for you to consider the expectancy of life of the plaintiff at the time he received the injury complained of, as shown by said Carlisle Life Tables, in so far as it may throw light upon the question of the probable length of life which plaintiff would have lived had he not received the injuries of which he complains, but it is not conclusive as to the time that he would have lived but for the injuries of which he complains. It is also proper for you to take into consideration in determining this question facts

well known to every one, that human life is uncertain and that no one can say with any degree of accuracy how long any particular person will live. You are to determine, however, from all of the facts and circumstances, as the same are shown by the evidence, as to his physical condition so far as shown by the evidence just prior to the injury, and his expectancy of life as shown by the Carlisle Life Tables, together with all of the other facts disclosed by the proof, which may throw light upon the subject as to the length of time he would probably have lived but for the injury of which he complains.

His expectancy of life, as shown by the Carlisle Life Tables, and the length of time he would have reasonably been expected to live but for the injuries of which he complains are to be considered by you only in the event that you find from the evidence offered upon the trial of the case and the law as given you by the court that plaintiff is entitled to recover in this case and also that the injuries of which he complains are permanent.

If you find from the evidence and under these instructions that plaintiff is entitled to recover, then you should allow him as damages such sum or amount as will fairly and reasonably compensate him for the loss he has sustained by reason of the alleged negligence of the defendant, as such damages and the amount thereof are shown by the evidence. If you find he is entitled to recover, the elements of his damages will consist in the loss of time occasioned by the disability, if any, in the matter of pursuing his usual business or performing other manual labor, or of earning money or wages in some other line of business or employment, and also his expenses of medical attendance, medicines, and nursing, and the physical pain and suffering and mental anguish, if any, occasioned by reason of his injury. You should allow him, on account of his disability to perform manual labor, for his inability to earn money or wages in some other business or occupation, only such sum as will fairly and reasonably compensate him for the loss he is shown by the evidence to have sustained. In determining the pecuniary injury he has sustained in this particular by reason of the injuries complained of, you should take into consideration the situation and physical condition he was in prior to and at the time he received the injury complained of, so far as shown by the evidence; his age, condition of health, habits as to industry, character of employment, so

far as said matters are shown by the evidence; the wages he was earning prior to, and at the time of the injury of which he complains; the nature and extent of the injuries he has sustained; to what extent he is unable to perform labor or engage in other business or occupation or pursuit by reason of said injuries; whether said injuries are permanent or otherwise; if permanent, the probable duration of his life, together with all of the other facts and circumstances bearing upon said question as the same have been shown and developed upon the trial hereof and therefrom determine and allow such reasonable sum or amount as you find, under the evidence, will compensate him for the loss he has thus sustained. In estimating this element of damages, you should bear in mind that you can allow him only such reasonable sum as will compensate him for his loss in being disabled from pursuing his usual business or performing other manual labor, or from engaging in other business or means of earning money or wages, in being thus deprived of the earnings of his business as locomotive fireman, or of earning money or wages in some other line of labor, business, or employment. You should also take into consideration the fact that in his business as locomotive fireman his earnings were probably paid as they were earned; and, in fixing the amount of his damages based upon what he would have been able to have earned in the future but for the injuries complained of, you should take into consideration the present value of such earnings, and also take into consideration what, if any, amount, he will be able to earn in other lines of employment or business in the condition in which he is left by reason of his injuries.

The part more particularly complained of is:

It is proper for you to consider the expectancy of life of the plaintiff at the time he received the injury complained of, as shown by said Carlisle Tables, in so far as it might throw light upon the question of the probable length of life which plaintiff would have lived had he not received the injury of which he complains. . . . You are to determine, however, from all the facts and circumstances as the same are shown by the evidence, as to his physical condition as shown by the evidence just prior to the injury, and his expectancy of life as shown by the Carlisle Life Tables, together with all of the

other facts disclosed by the proof which may throw light upon the subject as to the length of time he would probably have lived but for the injury of which he complains.

In instruction No. 21 the jury are instructed in regard to doctors' bills, medicine, nursing, mental pain and anguish, and physical pain and suffering, past and prospective, but the length of time for which a recovery might be had for future damages is not referred to in this instruction. Instruction No. 19 is not qualified or limited by 21, or any other instruction in this respect, so that the only rule for determining how long the plaintiff would continue to endure pain, etc., was the rule given in instruction 19.

Appellant contends that the nineteenth instruction is erroneous for the following reasons: First, that it allows the jury to estimate plaintiff's future pain and suffering, etc., on the basis of how long he would have lived if he had not been injured, estimated from life tables and from a consideration of the physical condition he was in before he was injured; second, that it allows a recovery to the plaintiff himself, while living, for the shortening of his own life; third, that there is no claim for damages in the petition based on the shortening of plaintiff's life; fourth, that the instruction refers to the life tables as showing how long plaintiff's life would continue, and that these tables were taken from the experience of lives of ordinarily healthy persons; and, fifth, that the instruction, in effect, allows a recovery for a death, and that this was never maintainable at common law.

The fourth proposition has been discussed in a prior division of the opinion. The fifth proposition we think is not in the case. In our opinion the instruction is not susceptible of the construction sought to be placed on it in appellant's proposition No. 2.

There was a verdict for $25,000. It is contended by appellant that, under the instructions, the recovery of dam-

ages for future pain, and the like, was not limited to the time plaintiff would probably live in his injured condition. The exception is well taken as to the first proposition.

As we have said, the instructions as to life tables and expectancy of life should be clearly stated, lest the jury be misled. We think the instructions did not clearly state the rule that as to future damages the question is, How long will plaintiff probably live and suffer such damages in his injured condition? We do not think this thought can be found in the instructions. It is true the court told the jury that the life tables were not conclusive, and that life is uncertain, but we find running through the instructions the expression as to the length of time plaintiff would probably have lived but for the injury. This would be correct, perhaps, had plaintiff been killed. The question here is, How long will he probably live injured as he is? It is proper to consider the physical condition, habits, and the like prior to the injury as bearing on the question as to whether a strong, rugged person would not be likely to live longer than a delicate person, with the same injuries. This matter should be considered, with his condition after being injured, in determining how long he would be likely to live in the condition he is in with his injuries.

As before stated, instruction 21 deals with future pain, etc., but the only rule for determining how long plaintiff will continue to endure such pain was the rule given in the nineteenth instruction. The recovery for such future damages was not pointedly limited to damages he will suffer with his injuries, and for the length of time he will probably live in that condition. Take the following statement in No. 19: "His expectancy of life, as shown by the Carlisle Life Tables, and the length of time he would have reasonably been expected to live but for the injuries of which he complains are to be considered by you only . . . in case his injuries are permanent." This is a sentence or paragraph by itself in the instruction. How would this be considered by jurors

inexperienced in such matters? It is true that in the same instruction, just prior to this, the jurors were told, in a general way, to consider, with his physical condition just prior to the injury, and his expectancy as shown by the life tables, "all the other facts disclosed by the proof which may throw light upon the subject as to the length of time he would probably have lived but for the injury of which he complains." Of course, the instructions should be considered as a whole, but, so considering them, we are impressed that the jury were likely to, and did, under the rules stated, give too much weight to the life tables and plaintiff's physical condition just prior to his injuries, and not enough consideration to plaintiff's injuries and the length of time he was likely to live in that condition; that the instructions permitted the jury to allow for future suffering, and the like, for a longer period in the future than plaintiff will be likely to live, namely, for the period that he "would probably have lived but for the injury of which he complains."

The decision in the recent case of *Hughes v. Railway*, 150 Iowa, 232, is in point. In that case the following instruction was given:

It is admitted and conceded by the parties that the tables of life expectancy show that the life expectancy of a man at the age of plaintiff on April 3, 1907, was fifteen years. Upon this you are instructed that these tables are formed and based upon the lives of individuals who are in the ordinary pursuits of life and in ordinary conditions of health; but the court says to you that these tables are not conclusive, as to the age the plaintiff may continue to live, or the duration of his life, and in considering the expectancy of life of the plaintiff you should take this concession into consideration, together with all the evidence in the case, including the physical condition of the plaintiff at the time and prior to the alleged injury, his general health, his vocation in life, if any, with respect to danger, his habits, whether temperate or intemperate, and all other facts and circumstances as entering into the probable duration of the life of the plaintiff, as disclosed by the evidence,

This court condemned the instruction, saying::

This was given in order that the jury might have a guide whereby to estimate plaintiff's future and prospective mental and physical suffering and loss of earning capacity. He was asking nothing, even if he could have done so, for the shortening of his life, and the sole inquiry in this connection was, How long will plaintiff in his present injured condition live and continue to suffer, and for what length of time will his diminished capacity to make money and acquire a competency exist? As to prospective damages, it is quite clear that plaintiff's condition at the time of trial was a material fact, and the inquiry should have been directed to his expectancy of life in his then injured condition. The instruction given by the trial court referred the jury to plaintiff's condition before he received his injuries, and told them to consider his expectancy with reference to a time prior to his injuries and his condition of health at that time. The instruction cannot be sustained. It may possibly be, as plaintiff contends, that this instruction had no influence upon the verdict; but it is wrong from any point of view, and was presumptively prejudicial. If considered by the jury, as we must assume it was, for it was given for that purpose, it must have resulted in increasing the verdict.

In that case the defendant requested an instruction that, in determining the expectancy of plaintiff, they should take into consideration the condition of his health at the present time, with the other circumstances, etc., which instruction was refused, and it was held that it should have been given.

In *Howell v. Electric Railway*, 136 Mich. 437 (99 N. W. 407), it was said:'

Counsel introduced the mortality tables, for the purpose of proving plaintiff's expectancy of life. It was his. theory that her prospective pain and suffering should be compensated for. It is to be presumed that her pain and suffering up to the time of trial were included. It was also proper to include damages for prospective suffering for such time as the jury should find that she would suffer them, but not beyond her expectancy of life, and this means her expectancy at the time

of the trial. Counsel contend that the jury were permitted to allow damages on the basis of the expectancy before she was injured. If so, this was manifestly wrong. . . . A man who must contemplate death may be supposed to have more intense mental suffering than others, and may recover accordingly. But he cannot be supposed to be likely to suffer such increased anguish beyond the time that he in his present condition is likely to live. We think the charge is open to such construction. The court said to the jury: 'You are to determine from the evidence the probable period it may reasonably be expected she might have lived in the condition she was at the time of this injury'—and the jury might naturally infer that damages should cover that period. 'The plaintiff may not live for any particular period, and you should consider the contingencies of sickness, and you should make a reasonable deduction for such contingency, and for others, if any, that the evidence may disclose might lessen her reasonable prospect of living for the period mentioned in the table of mortality.' Again, in response to a question from a juror, he said: 'A juror: The question we want to ask is, What is the expectancy of this woman's life from this date on? The Court: In this state, gentlemen, we have what is known as a 'table.' Of course, it does not apply to any one in particular, but it is a table of expectancy that we use in the trial of lawsuits. By the table a person in good health at the age of twenty-five may reasonably expect to live for thirty-eight years to come. That table is not final. This case, of course, you will decide having in mind what the evidence discloses regarding the plaintiff's health previous to the accident, and of course that table will be something of a guide to you, but you will decide the case, of course, from the evidence regarding her health *especially previous to the accident.*'

This last expression is stronger, of course, than the instructions in the case at bar. The trial judge in the Michigan case, presumably with a better understanding of such matters than a jury, was not clear as to the effect and weight to be given life tables. How much more likely is a jury to misunderstand them unless the instructions are clear on the point. See, also, *Gas Co. v. Baker,* 146 Ind. 600 (45 N. E. 1049, 36 L. R. A. 688) ; *C., C. & St. L. Railway v. Miller,*

165 Ind. 381 (74 N. E. 509); *P., C., C. & St. L. Railway v. Brown* (Ind.), 97 N. E. 145.

Appellee cites: *Mitchell v. Railway*, 138 Iowa, 294; *Keyes v. Cedar Falls*, 107 Iowa, 516; *Roenfranz v. Railway Co.*, 140 Iowa, 33; *Peterson v. Brackey*, 143 Iowa, 75, and some other cases holding that where the instructions were not erroneous, but were correct as far as they went, there was no error. This is on the ground that in such a case the complaining party should have requested further instructions. They also cite *Beems v. Railway*, 67 Iowa, 435, which holds that the introduction of life tables is not essential. Such cases are not, in our judgment, in point, for the reasons before stated.

IV. On the question of assumption of risk, the court gave instruction No. 17 as follows:

In addition to a general denial defendant has plead that the plaintiff was an experienced fireman in its service, and had knowledge of the construction and equipment of its engines and tenders, and of the manner in which the coal was loaded and piled on said tender, and also had knowledge of the construction and condition of the track over which he was riding at the time of receiving the alleged injuries, and that he remained in its employ without complaint and with knowledge of all these conditions, and assumed whatever risk there was to him arising therefrom.

You are instructed that if you find from the evidence in this case that plaintiff was an experienced fireman, and had knowledge of the manner in which the tender was constructed and the manner in which it was filled with coal, and the nature and extent of his duties as fireman on said locomotive and tender, and that such duties at times required him to pass over the coal in said tender while the train was moving and measure the water in the tank in said tender, and had knowledge of the condition of the track and the curves in the track, and appreciated the danger incident to the performance of his duties in connection with the measuring of said water in said tank, and that with such knowledge on his part, and such appreciation of the danger to him in the performance of his duties, he made no complaint with reference to said matters,

but continued in the employ of the defendant and in the performance of said duties, under the conditions with which he was familiar, then and in that event plaintiff, by so continuing in said employment under such circumstances with such knowledge and appreciation of the dangers to him, assumed the risk of danger to himself in continuing in such employment under such circumstances, and in that event he would not be entitled to recover in this case on account of any alleged negligence of the defendant of which he had such prior knowledge and the danger of which he appreciated. But there would be no assumption of risk involved in a charge of negligence of which plaintiff had no knowledge or information, or the dangers of which he did not appreciate prior to the alleged injury. The burden of establishing this defense so plead by defendant is upon the defendant, and said defense must be established by a preponderance of the evidence.

The defendant asked an instruction on this subject, which was refused. It was in the following form:

You are instructed that the evidence in this case shows that the plaintiff knew of the manner in which the tender of said engine was constructed, and that he knew of the custom with reference to loading coal in said tenders, in respect to rounding it up in the center of said tender, and that he knew, or by the exercise of reasonable care ought to have known, of the peril incident to the construction of said tender and the piling of said coal, and he thereby assumed the risk thereof; and you will therefore find for the defendant upon this issue.

The only complaint of instruction 17 is that it omits the element, of what plaintiff could have known in the exercise of reasonable care, of the dangerous conditions which he claims resulted in his injuries. It will be noticed that this element was also omitted from defendant's answer. The allegations thereof are that plaintiff had knowledge of the manner in which the coal was piled, the condition of the track, and the other matters. It is insisted by appellee that the court was misled by defendant's answer, and that it

4. MASTER AND SERVANT: negligence: assumption of risk: instruction.

thereby invited the error, if there was any; that the instruction asked is not correct because it has no relation to the questions of negligence submitted to the jury, in that it does not refer to the condition of the track, or the speed of the train, or the order of the engineer, which were, in combination with the other matters charged, the grounds of negligence submitted to the jury. The offered instruction, if given, would have required the jury to return a verdict for the defendant, but, under the evidence in this case, this was a question for the jury. Plaintiff testifies that he knew about the piling of the coal; that there were no guards, etc., but says he did not know about the track until after he was thrown from the tender.

It is also insisted by appellee that the instruction is correct. We think that under the later decisions and as applied to the facts of this case, it is correct. As before stated, the only objection made is that the court failed to say to the jury that if the plaintiff could have known, by exercising ordinary care, of his peril, etc. This is the only point determined. Ordinary risks are assumed, and the employee is presumed to know of them and to appreciate the danger. Extraordinary risks may be so obvious as that he should know of them. As to such, he may not shut his eyes, but will be held to have known if he should have known, and then it would be a question for the jury as to whether, as a reasonable man, he should have appreciated the danger. But here, while plaintiff admits he knew of some of the alleged defects, he denied knowledge of the condition of the track. The matters of which he had knowledge were submitted to the jury in connection with the alleged rough track, the speed of the train, and the order of the engineer. The defendant is not bound by plaintiff's statement that he did not have knowledge of the condition of the track. Such knowledge, or the want of it, may be shown by the facts and circumstances in the case. *Dale v. Colfax Coal Co.,* 131 Iowa, 67, 71. It is ordinarily for the jury to say. There is a dispute

in the evidence as to whether the track was rough, and as to whether a person on the engine could notice it; some of the witnesses say they noticed a jolt or lurch in passing over this point, and others did not notice it. A defect may be so obvious that the employee must know of it, and it may be of such a character that, knowing of the defect, he must know and appreciate the danger, but it does not necessarily follow that because he knows of the defect he also knows and appreciates the danger. An engineer, seeing a large bridge gone, must know and appreciate the danger of plunging into the river, but a fireman who feels a jolt may know there is something wrong with the track, but not know the cause of it; he may not know whether the dirt is gone from under one or more ties or the extent of it. He is not required to, and in this case could not, make an independent investigation or inspection of the track. Unless the defect and danger are obvious, he has the right to assume that his employer has performed its duty. We are now speaking of extrahazards created or enhanced by the negligence of the employer, as distinguished from ordinary risks incident to the business which are assumed. This distinction has not always been accurately made, especially in some of the earlier cases. Plaintiff had been over this track before, but the track was being repaired and changed, according to some of the witnesses. Others say the repairs were completed, all but the last dressing of ballast. The last time plaintiff passed over it he was going in the other direction and upgrade. In passing this point at other times he may have been sitting in the cab where the lurch would not, perhaps, be as noticeable; he was in the performance of his duty in carrying out the order of the engineer, which, under the rules of the company, it was his duty to obey, as we understand the record. The rules were introduced in evidence, but are not contained in the abstract. Further, as to the question of assumption of risk, we think the question as to whether the employee appreciated the danger involves the question of knowledge

and consent to take the risk.  *Lee v. St. Louis Railway,* 112 Mo. App. 372 (87 S. W. 12, 20).

In *Texas & P. Ry. Co. v. Archibald,* 170 U. S. 665 (18 Sup. Ct. 777, 42 L. Ed. 1188), the defendant requested an instruction similar to the one requested here, containing the words ''that if the plaintiff knew, or by the exercise of ordinary care could have known,'' etc., which last were stricken from the request.  The court said:

The court was clearly right in striking the words from the requests.  The elementary rule is that it is the duty of the employer to furnish appliances free from defects discoverable by the exercise of ordinary care, and that the employee has a right to rely upon this duty being performed, and that whilst in entering the employment he assumes the ordinary risks incident to the business, he does not assume the risk arising from the neglect of the employer to perform the positive duty owing to the employee with respect to appliances furnished.  An exception to this general rule is well established, which holds that where an employee receives for use a defective appliance, and with knowledge of the defect continues to use it without notice to the employer, he cannot recover for an injury resulting from the defective appliance thus voluntarily and negligently used.  But no reason can be found for and no authority exists supporting the contention that an employee, either from this knowledge of the employer's methods of business or from a failure to use ordinary care to ascertain such methods, subjects himself to the risks of appliances being furnished which contain defects that might have been discovered by reasonable inspection.  .  .  .   He has a right to assume that the employer will use reasonable care to make the appliances safe, and to deal with those furnished relying on this fact, subject, of course, to the exception which we have already stated, by which, where an appliance is furnished an employee in which there exists a defect known to him, or plainly observable by him, he cannot recover for an injury caused by such defective appliance, if, with the knowledge above stated, he negligently continues to use it.  .  .  .  We think it sufficient to say that the law does not, under any circumstances, exact of him the use of diligence in ascertaining such defects, but charges him with knowledge of such only

as are open to his observation. Beyond that, he has the right to presume, without inquiry or investigation, that his employer has discharged his duty of furnishing him with safe and proper instruments and appliances.

The same rule applies here as to the track. See, also, *Kroeger v. Bridge Co.*, 138 Iowa, 376, and cases therein cited; *Lee v. Ry.*, 112 Mo. App. 372 (87 S. W. 12) ; *Chicago Co. v. Ponn*, 191 Fed. 682 (112 C. C. A. 228) ; *St. Louis Cardage Co. v. Miller*, 126 Fed. 495 (61 C. C. A. 477, 63 L. R. A. 551).

For the error in the nineteenth instruction, a new trial must be had, and the cause is *Reversed*.