PETER LEINEN, Appellee, v. J. L. JOSLIN, Appellant.

**Master and servant:** ASSUMPTION OF RISK: EVIDENCE. In this action
1   for injuries to plaintiff caused by turning the wheel of an engine
when off center and while the steam was on, the evidence showing
that it was his duty to turn the wheel when the steam was off but
that he had never done so when the steam was on, and that he
relied on the engineer's statement that the steam was off at the
time of the accident, presented a question for the jury to determine
whether he knew or should have known that the steam was on.

**New trial:** MISCONDUCT OF JUROR: WAIVER. Where the affidavits in
2   support of a motion for new trial on the ground of intoxication of
a juror disclosed that the attorneys for the complaining party knew
of his intoxication during the trial and did not disclose the fact to
the court, and it further appeared that the juror did not use any
liquor on the day it was claimed he was intoxicated, the motion was
properly overruled.

**Evidence:** CROSS-EXAMINATION. Where an expert witness had testified
3   to the various elements of danger involved in starting the flywheel
of an engine, it was proper on cross-examination to permit him to
state whether the danger was not affected by the position of the
machinery and the application of steam.

*Appeal from Jones District Court.*—HON. F. O. ELLISON,
Judge.

SATURDAY, SEPTEMBER 20, 1913.

PLAINTIFF was injured by having his hand and arm
caught by the wheel or belt on a threshing engine. Trial to
a jury. Verdict and judgment for plaintiff. Defendant
appeals. *Affirmed.*

*Jamison, Smyth & Gorman* and *Herrick, Cash & Rhine-
hart,* for appellant.

*C. J. Lynch,* for appellee.

PRESTON, J.—Defendant owned and operated a threshing
outfit, consisting of engine and separator. Defendant was an

experienced engineer and at the time of plaintiff's injury was personally in charge of and operating the engine. Plaintiff was a farmer, twenty-seven years of age, at the time he was hurt on September 2, 1909. He had been in defendant's employ in the summer of 1909 about a month as assistant separator man and did other work under defendant's orders and directions. He had some experience around an engine for about three years during the threshing and shredding seasons but had never operated an engine. Briefly stated, plaintiff's claim is as he states it in his evidence:

We moved the outfit on September 1st, but did not commence to thresh until the 2d. On the morning of the 2d we started out, fired up in the morning, put the belt on, run a little while. The help had not all arrived and there was no grain and so Joslin stopped the engine. The engine run probably five or ten minutes before shutting down. When he stopped the engine, it stopped on center. You have to take hold of the flywheel and start it off by hand when it stops on dead center. I knew that. When he went to start it was on center. Didn't start. He called me to come. I was about a hundred feet from the engine. I went over and he said, 'It is on center; turn her off.' I took hold of the flywheel to pull her down. I pulled down a couple of times and it didn't come. I asked him if the steam was off; he said it was; and I said I couldn't do it. Joslin stepped up to the flywheel. I was facing the wheel and took hold of the rim of the wheel on the outside with my left hand and on the inside of the rim with my right hand and pulled down with both hands. Joslin took hold and raised up on it. When it went, it went with full speed, caught my right hand, twisting the arm over, broke both bones of the wrist, and pulling off the tendons. Joslin was thrown over on the ground in front of the engine. When Joslin called me I didn't know whether the steam power was on or not. After I was hurt, and after defendant was drawn over the wheel, he got up and shut off the engine. I didn't think the steam was on when I took hold of the flywheel. Prior to this time defendant had called me to turn the flywheel when the belt was off but never when it was on or when the steam was on. No one told me how to take hold of the wheel.

I did it as I always had, and as defendant had seen me do it, and as I had seen others do it. Defendant never instructed me how to take hold of the wheel. It was only a short time between the first effort to pull it off center and the second time. After the first effort I stepped back and asked Joslin if the steam was shut off, and he said, 'Yes.' I did not know whether it was or not only what he told me. Sometimes it took more pulling than at other times.

There was evidence of other witnesses tending in the same direction. Defendant's evidence differs from that of plaintiff in some respects. He denies telling plaintiff the steam was shut off but claims it was in fact shut off. He claims plaintiff was injured by the belt flying off and striking him. The flywheel was forty inches in diameter and weighed six hundred pounds; the outer rim, over which the belt runs, is twelve inches wide and the belt six and one-quarter inches.

There was a conflict in the evidence as to how the injury was inflicted and as to whether the steam was or was not shut off, as there was as to the safe way of taking hold of the wheel to turn it. Some of the witnesses claimed that there was another way safer than the way adopted by plaintiff. But there is evidence from which the jury were justified in finding that it would be safe to do as plaintiff did, if the steam had been shut off. There is a conflict in the evidence as to whether enough steam would remain in the steam chest, after the steam was shut off, to turn the wheel fast enough and long enough, after the engine was pulled off center, to injure plaintiff. The court instructed the jury that, if plaintiff's injuries were caused in that manner, he could not recover. The above statement of facts disposed of one of the points argued by appellant; that is, that plaintiff was guilty of contributory negligence because he did not adopt the safer of two ways of taking hold of the wheel to turn it. It was clearly a question for the jury. The ground of negligence relied upon and submitted to the jury was, as stated in one of the instructions, whether the steam was turned on at the time

when the plaintiff attempted to turn the flywheel to get the engine off center, and whether the steam was cut off at the time that it is claimed the defendant told the plaintiff that the steam was cut off, and just before the plaintiff attempted to take hold of the flywheel, the second time, to throw the engine off center. The jury was instructed that if the steam was cut off when plaintiff took hold of the wheel and had not been on after the engine stopped on center, and before plaintiff's injury, then defendant would not be liable even though other causes may have made the flywheel start suddenly and rapidly when it was turned off center. There was evidence tending to show that plaintiff's injuries were permanent. The defenses pleaded were a general denial, contributory negligence, and assumption of risk.

I. The first point argued is the claim that it was established by plaintiff's own evidence that he assumed the risk. It is argued that among the duties which he was to perform was the turning of the engine off center, and that when it stopped on center it had to be pulled off by him. The evidence is not quite as counsel state it. Plaintiff testified on this point: "When it would stop on center I would go forward, or somebody else, and turn it off. It was part of my duty to do whatever was to be done there, and it was one of the things that had to be done, to turn the flywheel off center, when it had stopped on center." The mere fact that it was his duty, when called upon to help pull the flywheel off center, is not enough to charge him with assumption of risk. The matter was properly submitted to the jury under instructions about which there is no complaint; they are favorable to the defendant on this point. If the transaction occurred as claimed by plaintiff, and the jury so found, they were justified in finding that turning the wheel when the steam was on was not one of the ordinary risks assumed but rather a risk arising out of the negligence of his employer, and that he did not know the steam was on or appreciate the danger. Plaintiff says he did

1. MASTER AND
SERVANT:
assumption
of risk:
evidence.

not know the steam was on, and that he had never turned the wheel when the steam was on. He does say, it is true, that he knew the position of the levers when the steam was on or off, and that the tops of the levers could be seen on the other side of the engine, but that he did not look at, or pay any attention to, them but relied on defendant's statement that the steam had been turned off. He was not required to make an independent investigation. The defendant owed a duty to the plaintiff in regard to the machinery. Defendant was in a position to know whether the steam was on or off, and was in charge of and running the engine. Whether plaintiff in fact knew, or because it was so obvious that he must have known, that the steam was on was a question for the jury. See, on this proposition, *Scott v. Railway,* (Iowa) 141 N. W. 1065.

II. The next point argued is that defendant's motion for a new trial should have been sustained because of the alleged use of intoxicating liquors by one of the jurors and alleged intoxication of said juror during the trial.

2. NEW TRIAL: misconduct of juror: waiver.

Defendant filed affidavits in support of the claim. Plaintiff filed counter affidavits of sixteen persons contradicting the defendant's showing. The court found for plaintiff as to this and, as we think, was justified therein. Furthermore, defendant's affidavits do not show that he or his counsel did not know of the alleged intoxication before the case was submitted. On the contrary, the affidavits of his attorneys show that before the trial was concluded they did know the facts upon which they now base their claim that one of the jurors was intoxicated during the trial of the case. They did not report the matter to the court. They took their chances and speculated on the verdict. Had it been in their favor, the matter would not have been heard of, in all probability. The jurors were before the trial judge from day to day during the trial and were doubtless observed by him. This matter of the alleged intoxication of the juror is the point upon which the appellant seems to place the greatest reliance. The showing made by plaintiff clearly shows that

the juror did not use any liquor on the last day of the trial when appellant claims he was intoxicated. There was no error as to this.

III. One Byers, a witness for defendant, was asked on cross-examination: "Q. Now the fact is, then, that the question of the position of the machinery and the position of the reverse, the question of whether the throttle is open or closed, the question of whether steam is in a position to be admitted into the cylinder, affects the danger of the undertaking of moving the flywheel. (Defendant objects to the question as not cross-examination. Objection overruled, and defendant excepts.) A: As to whether the steam would be in the cylinder or throttle open? Q. Would that affect the danger of moving the flywheel? A. With the reverse on center? Q. Thrown forward. A. It would." Among other things this witness, testifying as an expert on direct examination, had stated: That the method of getting an engine off center was to close throttle, open cylinder cocks, and turn flywheel. Man takes hold and pulls down on flywheel. "Q. How does he know when he has turned it far enough? A. He doesn't know. Q. How does he know when to stop turning? A. May have to tell him; he doesn't know. In my opinion and experience as a threshing man I would think it dangerous to take hold of the inside of the flywheel and above the belt with the right hand and pull down to turn it off center *with steam on.*" The witness further testified that he had taken engines apart and was familiar with various parts. The answer to first question on cross-examination indicates that he had theretofore been testifying as to reverse lever and the effect of placing same in center. "Q. You say that is a dangerous way with steam on? A. No, sir; I did not say that, I said with the steam in the steam chest, if the steam was cut off at the time in the cylinder, and the reverse lever in the center there would be no danger in taking hold of the wheel." From this it appears that the witness had testified fully as to the various elements that affect the safety or danger of turning the flywheel.

3. EVIDENCE: cross-examination.

Now the question which was objected to, and the only question to which any objection was made, is as heretofore quoted. The only objection interposed was "not cross-examination." Clearly the question was proper and was directly within the scope of the direct examination. The witness was testifying as an expert and some latitude was permissible in his examination. The trial court was within its discretion in permitting the answer. The question complained of simply asked the witness if the various elements enumerated affected the hazard of moving the wheel. He had already covered the ground, and as indicated had testified without objection that with reverse lever on center all danger in moving flywheel was eliminated. The question was proper cross-examination and was within the issues. Further the same testimony is in the record from several other witnesses without any objection.

The witness Byers was the last witness called by appellant and the last one of six experts called by him. It is not a case of making an objection to a class of evidence and failing to object to the same questions thereafter. There was no error at this point. Other matters are suggested in the errors assigned but not argued. We discover no error therein.

IV. After this appeal was taken a controversy arose as to when the judgment was entered. Appellee filed a motion to dismiss the appeal or to affirm the judgment, and an application to correct the record was made in the district court. The correction was made, and from this defendant appealed. The two cases were submitted together. It appears it was agreed that, when the court ruled on the motion for a new trial and entered judgment, it was to be as of a certain date prior thereto. Appellant's contention is that the judgment was entered before his abstract was filed, and that he is properly in this court.

Having decided and affirmed the case on the merits, it is unnecessary to discuss the second appeal or the motion to dismiss. We find no prejudicial error in the record, and the judgment is therefore *Affirmed.* All the Justices concur.