JOE BOROUGH, Appellee, v. MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY, Appellant.

**WITNESSES: Impeachment—Contradictory Statements Out of Court.**
1  A witness may be impeached by a showing that he has made material statements out of court absolutely inconsistent with material statements made by him in court.

**WITNESSES: Impeachment—Foundation—Identification of Time and**
2  **Place.** In laying the foundation for impeachment by a showing of the making of inconsistent statements, the *time* and *place* need not be specifically designated, when it appears of record that the witness knew what *time* and *place* were being referred to.

**TRIAL: Instructions—Submitting Unsupported Issues.** Error results
3  from copying into the instructions all the grounds of negligence enumerated in the petition, and directing the jury that one or more of the grounds ''alleged by the petition'' must be established, when *some* of said grounds are without support in the evidence.

**DAMAGES: Injured Condition as Bearing on Life Expectancy.** Error
4  results from excluding from the jury the ''injured condition'' of a party, as bearing on life expectancy.

*Appeal from Keokuk District Court.*—CHARLES A. DEWEY, Judge.

SEPTEMBER 27, 1921.

ACTION to recover damages for personal injuries alleged to have been caused by the negligence of the defendant in operating one of its trains over a public crossing. The case was tried to a jury, which trial resulted in a verdict for the plaintiff, and judgment was entered on the verdict. The case was here on appeal once before (*Borough v. Minneapolis & St. L. R. Co.*, 184 Iowa 210), and the facts there set out are substantially the same as in this record. We need not repeat the facts, except as necessary in discussing the errors complained of. Defendant appeals. —*Reversed and remanded.*

*James A. Devitt* and *Stockman & Baker,* for appellant.

*C. C. Orvis, F. M. Beatty,* and *Talley & Snakenberg,* for appellee.

ARTHUR, J.—Defendant assigns as error the refusal of the court to admit the testimony of the defendant's witness Marq Barr, offered to impeach plaintiff's witness L. C. Northup. The record sufficient for the consideration of this claimed error is as follows:

1. WITNESSES: impeachment: contradictory statements out of court.

A coroner's inquest was held on the night of the accident, August 14, 1914. L. C. Northup was a witness at the inquest, and testified:

"We could see the freight train standing there, by the headlight of the passenger train. The freight train was coupled together, as far as I know. I told them we had better hold up a little, but they thought we could make it, and get between the two trains. I jumped out of the buggy to the right."

Three days later, on August 17th, Northup, at the request of Marq Barr, one of the employees of defendant, made a signed statement of what occurred at the time of the accident:

"I and Borough were in the seat, and Smithart was on our knees. When we came to the M. & St. L. crossing, east of the depot, we saw a freight train standing on the railroad track, with the train cut for the crossing. I heard the passenger train coming, and said, 'I don't believe we can make it;' and Smithart and Borough both said they thought they could. I did not realize the train was so close. About the time the mare was going on the track, I then realized we were in great danger. I then jumped out and saved myself. The freight train was standing still, when I called the attention of the others about the train coming. Could not tell how far away it was. Could see the headlight on the engine. * * * When I first heard the train coming, I think we were about 15 or 20 feet from the freight train. The driver did not halt the horse, as I remember it. I could not tell anything about the speed of the train. I don't think Smithart said he was going to drive between the cars, but simply said he thought he could make it."

On this trial, Northup testified:

"Smithart was driving. I was sitting on the right side, Borough on the left side, Smithart sitting in our laps. The horse was traveling at an ordinary gait. I noticed a train of cars on the right of way. It was cut for the crossing. I judge it was 30 feet between the cars. We drove up onto the track, and, as the passenger train came, it jammed together. I didn't observe the passenger train. I didn't hear any train on the right of way that night. The first I saw the passenger train was before we got on the M. & St. L. tracks. I didn't see the passenger train until it was within 20 feet of the crossing. I think it was about 140 feet from the crossing down to the head of the freight engine. There was some smoke from the freight engine. It obstructed the view some to the east. I didn't read over the statement I made to Barr, and it was not read over to me. I made the statement to Barr that I made as a witness."

On cross-examination, Northup was asked:

"Q. Didn't you say to Mr. Barr: 'I heard the passenger train coming, and I said I didn't believe we could make it, and Smithart and Borough both said they thought we could. I didn't realize that the train was so close. About the time the mare was going on the track, I then realized we were in danger. I then jumped out and saved myself'? A. I do not know. Q. Didn't he read that over to you from the paper? A. I don't remember. Q. Didn't you make that statement to Barr in the presence of the deputy sheriff? A. No, sir."

Concerning the written statement made by Northup, Barr testified:

"I met Northup at the sheriff's office. The deputy sheriff, Mr. Rathbun, was present. The statement was made to me in the sheriff's office at Sigourney. I told Mr. Northup, at the time, that I represented the railroad company. He signed the statement in my presence, and in the presence of Mr. Rathbun. I read it over to him, and went over it with him. I read it to him exactly as it is written."

J. J. Rathbun, deputy sheriff, testified:

"I was present in the sheriff's office when Northup came there and talked this matter over with Barr. I heard the conversation between them. I heard the statement contained in the signed statement. I saw Mr. Northup sign it. The statement

was read over by Mr. Barr to Mr. Northup just as it appears in the written statement. It was read over to Mr. Barr, and Mr. Northup followed the reading with Mr. Barr. After it was read over in my presence, Northup signed it.''

On the trial, Northup, as a witness, on cross-examination, admitted that, after the former trial, he had a conversation with Mr. Barr, but specifically denied that in that conversation he had reiterated to Barr the truth of the statements contained in the written statement, the record on this point being:

''Q. You had a talk with Mr. Barr recently about this transaction, did you not? A. Not very much,—no, sir. Q. You said to him in that conversation that the statement that you had signed was a true account of the transaction? A. No, sir. Q. You did not say that to him? A. No, sir. Q. Did you not tell him that it was all true that you had said to him? A. No, sir.''

The defendant called Barr as a witness, the record of his examination being as follows:

''I had a talk with Northup in Sigourney, some time after the first trial. Q. And what, if anything, did he [Northup] state in that conversation in relation to this statement [the written statement signed by Northup]? (Objection: Plaintiff objects as incompetent, irrelevant, and immaterial, witness not being a party to the suit, a mere witness in this case, and calling for hearsay testimony. Objection sustained. Defendant excepts.)

''Offer: The defendant offers to show by this witness that, in a conversation with the witness Northup, after this statement was taken, and after the first trial of this case, that the witness Northup said to this witness [Barr] that the statement that he had given him in the sheriff's office at Sigourney was the truth about what had occurred and the manner in which the accident had occurred, and that every statement contained in said written statement was the truth as to how the accident had occurred at Martinsburg, at the time the plaintiff in this case was injured. (Plaintiff makes the same objection to the offer of defendant. Sustained. Defendant excepts.)''

In brief, the record discloses that Northup was a material witness for the plaintiff; that Northup had testified on the original trial of this case, and that, as a witness on this trial,

he was asked if, after the first trial, and after he had testified contradicting his written statement given to Barr, he did not have a talk with Barr; that he admitted having a talk with Barr after the first trial, but specifically denied that in such conversation he had told Barr that the written statement he had given him was true. Barr was placed on the stand, and by him defendant offered to prove that, after the first trial, he had a conversation with Northup in which Northup stated to Barr, in substance, that the written statement which he had given was the truth about the transaction. Certainly, this evidence was admissible, and the ruling of the trial court was clearly erroneous. The testimony offered was competent and material, as impeaching testimony, and it was error to reject it. *State v. Gray*, 43 Ore. 446; *State v. Cary*, 159 Ind. 504; *State v. Rudd*, 97 Iowa 389. In substance, we have often said, and in *McNamara v. Corporation of New Melleray*, 88 Iowa 502, we say:

"When errors appear, prejudice is presumed to result therefrom; and it cannot be disregarded, unless from the record it appears that the error has worked no prejudice to the objecting party."

Counsel for appellee urges that the proper foundation was not laid in cross-examination of Northup for the introduction of Barr as an impeaching witness, because the place and time of the claimed conversation were not definitely fixed. Witness Northup recalled the conversation referred to, and admitted having it, making it unnecessary to further identify the conversation. *State v. Gray*, 43 Ore. 446.

2. WITNESSES: impeachment: foundation; identification of time and place.

It is urged by counsel for appellee that the written statement made by Northup to Barr was in evidence for comparison with the oral testimony of the witness, and that it would add nothing in ascertaining the truth to receive the offered testimony of Barr, and thereby attempt to prove that Northup had afterwards confirmed the facts recited in the written statement. Perhaps this contention would be logical if Northup had not, in his oral testimony, said that he never made the statements as they appeared in the written statement, and conveyed the idea that he gave to Barr the same facts that he related as a witness, but that Barr did not correctly record him. In other

words, the witness Northup disputed the facts in the written statement. Under that state of the record, the testimony offered was relevant and competent impeaching testimony.

There is hardly any more familiar practice than that of impeaching a witness by proof of his former statements which are inconsistent with his present testimony. Such attempted impeachment is a direct attack upon the testimony of the witness. In general, it may be said that the credibility of the witness may be attacked by the testimony of other witnesses that the facts to which he has testified are other than as he has stated. One of the most frequent methods of discrediting the testimony of a witness is to show that he has made prior statements which are inconsistent with, or which contradict, his testimony at the trial. Of course, to impeach a witness by proof of contradictory statements, they must be material to the issue. There can be no question, we think, as to the materiality of the proof offered in the instant case.

Northup first testified at the coroner's inquest, and a few days later, made the written statement to Barr. His testimony at the inquest and his written statement are in substantial accord. There is a wide difference between the facts related by the witness before the coroner and in the signed statement, and the testimony of the witness on this trial. Northup was the only living witness to the accident, except the plaintiff. When the case was before us on the former appeal, we said, concerning Northup:

"Northup, who escaped by jumping from the buggy, was a witness, and gave a strangely different account of the conditions there [at the coroner's inquest] from that given by him on this trial."

We further said:

"Both statements of this witness cannot be true. If he has deliberately falsified in one instance, it is quite impossible to tell from his testimony what the fact really is."

Rules governing the introduction of impeaching or discrediting testimony cannot be stretched for the purpose of meeting exigencies; but we think that, under the approved rules of practice, the offered testimony of Barr was admissible. The "strangely different account of the conditions" related by

Northup as a witness, from that given by him before the coroner and in the signed statement, seems to call for the admission of all competent testimony tending to discredit him as a witness.

Defendant assigns as error in the giving of Instruction No. 2 that the court, instead of submitting the specific grounds of negligence, referred the jury to the negligence alleged in plaintiff's petition, and that this submitted to the jury issues of negligence that were without support in the evidence. The instruction stated that the plaintiff must establish, in order to recover, that the defendant company was negligent "in some one or more of the particulars claimed, and substantially as alleged by plaintiff in his petition." Five grounds of negligence were alleged. One ground was that the defendant was operating the passenger train without having a headlight on the engine; another, that the freight train was backed over the crossing with negligent speed. The complaint is that this permitted the jury to find that the defendant was guilty of negligence as to charges of negligence set out in the statement of the issues, which were copied from the petition, of which there was no evidence, and which were, therefore, not properly submitted to the jury. Among the grounds of negligence alleged in plaintiff's petition, and copied into the statement of issues, were the above-mentioned grounds as to the headlight, and the speed with which the freight train was closed up over the crossing. We have been unable to discover any evidence in the record bearing on these two specifications of negligence, and because of its absence we are of the opinion that these two issues of negligence ought not to have been submitted to the jury, and that it was prejudicial error to submit them.

The issues, substantially a copy of the pleading, were stated in Instruction No. 1. By Instruction No. 2, as applying to Instruction No. 1, the court instructed the jury that they could find the defendant guilty of negligence if they found that the freight train was backed over the crossing at an excessive rate of speed, when there was no evidence to support this allegation; and the court said in Instruction No. 2 that the jury could find

3. TRIAL: instructions: submitting unsupported issues.

the defendant negligent in not having a headlight on the passenger engine, which was contrary to the evidence.

In Instruction No. 4, which is assailed by defendant, the jury was told:

"There can be no recovery, unless you find from a preponderance of the evidence that defendant was negligent in some one or more of the particulars alleged in the plaintiff's petition."

This instruction did not state specifically the grounds of negligence charged which the jury should consider. It was error to thus submit to the jury all of the five grounds of negligence alleged, when there was no issue made in evidence as to, and no evidence offered to support, at least two of the grounds, —those above mentioned. Unquestionably, it is the duty of the court to confine the jury to a consideration of the grounds of negligence which had sufficient support in the evidence to warrant submission, instead of presenting to the jury and permitting it to consider all the grounds of negligence alleged, regardless of whether or not they had support in the evidence. It is reversible error to submit to a jury issues that are without support in the evidence. *McDivitt v. Des Moines City R. Co.*, 141 Iowa 689; *City Nat. Bank v. Mason*, 181 Iowa 824; *Rawleigh Med. Co. v. Bane*, 181 Iowa 734; *Packers Nat. Bank v. Michener*, 183 Iowa 122.

Error is assigned as to Instruction 15, in relation to determining the expectancy of plaintiff. The jury was told that, in determining the expectancy:

4. DAMAGES: injured condition as bearing on life expectancy. "You must take into consideration the condition of his health at the time of his injury, and all facts and circumstances bearing thereon, as shown by the evidence, if any, and as bearing upon the question of how long the plaintiff would be likely to live."

It is the claim of defendant that in this instruction the jury was told to determine the plaintiff's expectancy from the condition of his health at the time of his injury, but was not told that, in determining his expectancy, they should take into consideration his expectancy in his injured condition,—thus ignoring a most material matter upon the determination of the question of how long the plaintiff would be likely to live. It is true that the question was, How long would plaintiff prob-

ably live, injured as he was? *Scott v. Chicago, R. I. & P. R. Co.,* 160 Iowa 306; *Hughes v. Chicago, R. I. & P. R. Co.,* 150 Iowa 232. In the *Scott* case, we said:

"The question here is, How long will he probably live, injured as he is? It is proper to consider the physical condition, habits, and the like, prior to the injury, as bearing on the question as to whether a strong, rugged person would not be likely to live longer than a delicate person, with the same injuries. This matter should be considered, with his condition after being injured, in determining how long he would be likely to live in the condition he is in with his injuries."

Under the rule announced in the *Scott* case and the *Hughes* case, the instruction in the instant case cannot be sustained.

Defendant complains that the verdict is grossly excessive, and that for that reason a new trial should have been granted. We have carefully examined the testimony bearing on damages. We think the damages awarded are excessive, but would not reverse on that account, if reduction would be accepted by plaintiff.

The other assignments of error we deem without merit, and not necessary to discuss, and not helpful on another trial of the case. Because of the errors pointed out, the case is reversed and remanded.—*Reversed and remanded.*

STEVENS, FAVILLE, and DE GRAFF, JJ., concur.