PACKERS NATIONAL BANK, Appellee, v. JOSEPH MICHENER, Appellant.

**BILLS AND NOTES:** Transfer by Delivery—Surrender by Collateral Holder—Warranty. One who purchases a note at a time when it is held by another as collateral security, and, at the request of the seller, pays the purchase price by check to the collateral holder, may not deny liability on the check on the ground that the purchased note was a forgery, it appearing that the collateral holder, on receipt of the purchaser's check, cancelled the seller's debt, and delivered the collateral to the purchaser thereof. Under such circumstances, there is no warranty by the collateral holder of the *title* or *validity* of the note. (See Sec. 3060-a65, Code Supp., 1913.)

**TRIAL:** Instructions—Applicability to Evidence—Refusal to Submit Issue. Issues wholly without support in the evidence must necessarily be withheld from the jury.

**SALES:** Rescission—Restoration of Status Quo. One who would rescind a contract of sale must first restore, or offer to restore, that which he has received under the contract.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

SEPTEMBER 22, 1917.

REHEARING DENIED MARCH 15, 1918.

ACTION at law to recover amount of check drawn by defendant in plaintiff's favor upon the First National Bank of Council Bluffs. Trial to jury. Verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Fremont Benjamin* and *Verne Benjamin,* for appellant.

*John M. Galvin* and *William J. Coad,* for appellee.

WEAVER J.—Prior to the transaction between the plaintiff bank and the defendant, one Axel E. Grandjean became indebted to the bank, and secured payment of such debt by the deposit of a promissory note and mortgage for $2,500, purporting to have been made by one Hanson to one Johnson, and assigned by the latter to Katherine Grandjean. Thereafter, Axel E. Grandjean negotiated a sale of the collateral note and mortgage to the defendant, Michener, who undertook to pay therefor by the conveyance of a tract of land, and in addition thereto, to pay Grandjean the sum of $960.20. Instead of paying this difference direct to Grandjean, Michener, with Grandjean's consent, gave his check for that amount to the bank. Of the amount of this check, the bank applied $820 to the payment of Grandjean's debt, and deposited the remainder to his credit, and surrendered the notes which evidenced such debt. Before the check was presented to the bank on which it was drawn, Michener stopped payment thereon, because of information obtained by him that the note and mortgage were forgeries and worthless.

Suit being brought upon the check, defendant answered, admitting the making of the instrument, but alleging that it had been obtained from him by fraud and misrepresentation on the part of Grandjean, participated in by the bank, by which he was induced to believe the said note and mortgage to be valid instruments. He further alleges that the mortgage was upon land in Nebraska, and was not subscribed by witnesses, as is required by the laws of that state, and that, having discovered such defect, pending the negotiations, he refused to complete the deal until such defect was corrected; and it was then and there agreed between the parties that the check should not be payable until this was done; and

1. BILLS AND NOTES : transfer by delivery : surrender by collateral holder : warranty.

that such correction has never been made. He further alleges that this agreement was made at the bank, and in the presence and hearing of its officers.

In submitting the cause to the jury, the court charged that there was no evidence in the record to support the finding of fraud or false representation on the part of the bank or its officers, but did submit the issue as to whether there was any agreement or understanding that payment of the check should be conditioned upon Grandjean's procuring the mortgage to be properly witnessed. In so submitting the case, the court told the jury that, if this claim was found to be true, and defendant had offered to return the papers which he had received at the time of delivering the check, then the plaintiff was not entitled to recover anything, and the verdict should be for the defendant.

2. TRIAL: instructions: applicability to evidence: refusal to submit issue.

I. Did the trial court err in refusing to submit to the jury the question whether the bank was guilty of any fraud or misrepresentation?

We find no error in this respect. While it is charged that "the plaintiff and Axel E. Grandjean represented to defendant that the said mortgage was a valid and a good mortgage," and that they "did conspire together to sell such worthless mortgage and note to defendant, representing the same to be good," when it was, in fact, a forgery, we find no evidence on which the truth of such allegation could properly be found. There was an utter absence of evidence tending to show any combination or collusion between the bank and Grandjean to swindle the defendant. It appears that the bank did believe the mortgage to be a valid instrument; for it had lent Grandjean $800 on the strength of the security it furnished, and if it was, in fact, a forgery, there is not the slightest showing that its fraudulent character had come to the bank's notice until defendant himself discovered it, after his purchase of the paper. The defendant

does not swear that he asked the bank officer whether the mortgage was valid, nor does he say that the officer told him it was valid, nor that the officer claimed to know anything concerning the mortgaged property or its value, or the title thereto. The most he says is that he asked the assistant cashier if it was a good note and mortgage, and received an answer in the affirmative. This is denied by the witnesses for the bank; but, even assuming the statement to be true, it is not enough of itself to sustain the charge of fraud or false representation. The bank is not in any manner shown to have been a party to the fraud, if any, by which these papers were brought into existence or put into circulation. Grandjean himself was not a party to the making of these instruments, and there is no evidence that, at the time he deposited them as collateral, or when he disposed of them to defendant, he knew of their forged character. It is probable that, as against him, even though he acted in good faith, the defendant could sustain a plea of want or failure of consideration; but that is not a matter for our present consideration. Proof of the alleged forgery alone has no probative value in support of the plea of fraud and false representation on the part of the bank, and the issue upon this plea was properly withdrawn from the jury.

II. But counsel argue that the legal title to the collateral was in the bank, and that the transaction should be treated as a sale of such collateral by the bank. Were this correct, and such plea had been made, it may be admitted that, the consideration for such purchase by the defendant having wholly failed, plaintiff could not enforce collection of the check, notwithstanding its entire good faith in the transaction. But no such state of facts is shown. While the bank, when holding the collateral, was, in a qualified sense, its owner, such title was held as security only, and Grandjean, as equitable owner, had the right to sell the same, subject to the bank's claim, and to direct the bank

to deliver the paper to the purchaser, upon payment of the debt for which such collateral had been deposited. In recognizing such right, and delivering the collateral to the purchaser, the bank cannot be held to warrant the title, or be compelled to reimburse the purchaser for any loss sustained if the paper prove worthless.

III. The one issue presented which has any support in the record is that which is raised by the plea that the check was delivered to be paid only on condition that witnesses to the execution of the mortgage should be supplied. The testimony of the defendant as a witness tended to support this answer, but the jury appears to have found against him upon this question, and this, we think, forecloses further discussion concerning it.

3. SALES: re-scission: restoration of *status quo.*  We find no just ground for counsel's criticism of the court's instruction which made the return or tender of the collateral paper which the bank surrendered on receiving the check essential to his right to refuse payment. The answer expressly pleads an offer to return both the collateral note and mortgage, and the rule which required such showing applied equally to the notes which the bank held against Grandjean. The court, therefore, in Paragraph 15 of its charge, properly told the jury that, if these notes were delivered to the defendant by the bank upon receiving his check, he could not rescind the transaction and repudiate his check, if he did not return or offer to return the notes so surrendered to him. This seems to be a self-evident proposition. It is one of the most familiar principles of the law governing such cases that a party will not be permitted to rescind or deny his contract, even for good cause, except upon condition that, so far as possible, he restore to the other party all that he has received by virtue of the agreement which he repudiates.

IV. Some other exceptions are argued, but the questions

raised are ruled adversely to the appellant by the conclu-
sions we have already announced, and we will not extend
this opinion for their discussion.

We find no reversible error in the record, and the judg-
ment below is—*Affirmed*.

GAYNOR, C. J., PRESTON and STEVENS, JJ., concur.