Herbert J. MECK, Plaintiff–Appellee,

v.

**IOWA POWER & LIGHT COMPANY, Defendant–Appellant,**

v.

**GENERAL ELECTRIC COMPANY, Third–Party Defendant–Appellee,**

Atlantic Plant Maintenance Company and Electric Mutual Insurance Company, Intervenors–Appellees.

No. 90–223.

Court of Appeals of Iowa.

Feb. 26, 1991.

Gregory G. Barntsen of Smith, Peterson, Beckman & Willson, Council Bluffs, for defendant-appellant.

Randall J. Shanks, Council Bluffs, for plaintiff-appellee Meck.

Charles E. Cutler and Janice M. Herfkens of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for intervenors-appellees APM and Electric Mut.

John M. French of Stuart, Tinley, Peters, Thorn, Smits, French & Hughes, Council Bluffs, for General Elec. Co.

Considered by DONIELSON, P.J., and HAYDEN and HABHAB, JJ.

HAYDEN, Judge.

Herbert Meck was a millwright employed by Atlantic Plant Maintenance (APM), a wholly owned subsidiary of General Electric Company (GE). In 1987 APM and GE had a labor and services contract with Iowa Power. Under this contract APM and GE agreed to supply millwrights to perform maintenance at Iowa Power's Council Bluffs plant.

On May 14, 1987, Meck was injured in the course of his employment for APM and GE while working at Iowa Power's Council Bluffs plant. The injury occurred when a previously stopped conveyer belt began to move while Meck was standing on it.

Meck obtained $80,000 in workers' compensation benefits from his employer, APM. In addition, Meck later filed the present suit against Iowa Power to recover for his injuries. A jury found Meck twenty-two percent at fault and Iowa Power seventy-eight percent at fault. GE, which was brought into the case as a third-party defendant by Iowa Power, was found to be zero percent at fault. The jury assessed Meck's total damages at $433,800. On the basis of the jury's findings, the district court entered judgment against Iowa Pow-

er for seventy-eight percent of Meck's total damages, or $338,364.

Iowa Power has appealed the judgment against it. Iowa Power raises several challenges to the instructions submitting specifications of negligence to the jury.

Two basic arguments underlie all the objections to the jury instructions. First, Iowa Power contends the district court erred by instructing the jury Iowa Power had a duty of some type to Meck. Second, Iowa Power contends the jury instructions were not supported by the requisite substantial evidence. We will address all Iowa Power's jury instruction objections under these two main themes.

In its only issues relating to matters other than instructions, Iowa Power contends it should have been given an offset credit for the $80,000 workers' compensation settlement Meck received from APM's insurance carrier. Iowa Power contends an offset credit was necessary because APM and its insurer lacked a valid workers' compensation subrogation lien against any recovery Meck might make from other sources. The district court held APM and its insurer had a valid subrogation lien. In a related issue, Iowa Power contends the district court erred by excluding from evidence a copy of the $80,000 workers' compensation settlement agreement.

Our review in this case is for errors of law. Iowa R.App.P. 4.

I. *Jury Instructions*

■ The law on giving of jury instructions in Iowa is well developed. Jury instructions are designed to explain the applicable law to the jurors so the law may be applied to the facts proven at trial. *State v. Freeman*, 267 N.W.2d 69, 71 (Iowa 1978). Submission of issues that have no support in the evidence to the jury is error. *W.T. Rawleigh Medical Co. v. Bane*, 181 Iowa 734, 739, 165 N.W. 42, 43–44 (1917); *accord Borough v. Minneapolis & St. L.R. Co.*, 191 Iowa 1216, 1223, 184 N.W. 320, 323 (1921); *see Miller v. International Harvester Co.*, 246 N.W.2d 298, 301 (Iowa 1976). Conversely, failure to submit issues that are supported by substantial evidence

also is error. *See Borough*, 191 Iowa at 1223, 184 N.W. at 323; *see also Miller*, 246 N.W.2d at 301.

■ A corollary to these rules is the trial court has a duty to ensure the jury understands the issues it must decide. *Clinton Land Co. v. M/S Assocs., Inc.*, 340 N.W.2d 232, 234 (Iowa 1983); *McDivitt v. Des Moines City R. Co.*, 141 Iowa 689, 697–98, 118 N.W. 459, 463 (1909). In fulfilling these duties, the trial court must "instruct with reasonable fullness on pleaded issues supported by substantial evidence." *Clinton Land Co.*, 340 N.W.2d at 234. "The sufficiency of the evidence to warrant submission of a pleaded issue to the jury is decided by giving the evidence the most favorable construction it will reasonably bear in favor of the party urging submission." *Collegiate Mfg. Co. v. McDowell's Agency, Inc.*, 200 N.W.2d 854, 858 (Iowa 1972); *Campbell v. Martin*, 257 Iowa 1247, 1251, 136 N.W.2d 508, 511 (1965).

■ A second corollary is the trial court has a duty to ensure the jury understands the law it must apply. *Sanders v. Ghrist*, 421 N.W.2d 520, 522 (Iowa 1988). In evaluating this, we must read all of the instructions together, not piecemeal or in artificial isolation. *Id.; Clinton Land Co.*, 340 N.W.2d at 234. We must reverse and order a new trial if the instructions as a whole are insufficient to convey the applicable law. *Sanders*, 421 N.W.2d at 522 (citing *Adam v. T.I.P. Rural Elec. Co-op.*, 271 N.W.2d 896, 900–01 (Iowa 1978)).

We have reviewed the arguments of counsel and the disputed jury instructions. Two main themes emerge in one form or another throughout all Iowa Power's assignments of error. First, Iowa Power argues the trial court improperly instructed the jury on either the existence or degree of Iowa Power's duty concerning Meck as an independent contractor. Secondly, Iowa Power contends the disputed jury instructions are not supported by the necessary substantial evidence. *See Collegiate Mfg. Co.*, 200 N.W.2d at 858.

■ These two themes are intertwined. The special facts and circum-

stances in this case distinguish it from an ordinary property owner versus independent contract action. Iowa Power controlled and operated large conveyer belts for tons of coal to fire its huge generators. It has over four miles of belts at the site, including the conveyer belt in this case. It operated these conveyer belts from a remote control room, not in visual contact with the belt in question. There is evidence Iowa Power usually kept a coal handler on the floor of belts in operation. This practice was conducted for safety reasons to make sure the belts were clear before they were started. Thus, the evidence supports an instruction Iowa Power knew or should have known of a special precaution necessary for safety. Iowa Power did not have a coal handler on the floor when it started the belt where Meck was working. Thus, there is evidence Iowa Power breached a known duty of ordinary care for a particular known danger.

Iowa Power also had warning horns which were supposed to sound ten seconds before a belt started. There is evidence the horn on the floor where the accident happened may have worked only intermittently, and Iowa Power knew or should have known of the non-operation of the horn. Additionally, there is evidence in the record Iowa Power had an electrician repairing the warning horn the day after the accident.

One of Iowa Power's employees testified he was concerned when he heard the belt on which Meck was working was going to start. The employee attempted to contact the control room via his hand-held radio. He could hear the control room, but his radio would not transmit. The employee testified there had been problems with the radios since 1981. He had repeatedly complained about the radio malfunctions. Therefore, Iowa Power knew of these malfunctions. Apparently Iowa Power only took serious steps to completely replace or correct the known malfunctioning radios in 1989, more than two years after the accident.

Additionally, there is evidence Iowa Power did not follow its usual and normal procedure of requesting an equipment outage (REO) when work is being performed on the equipment. A REO results in the main circuit breaker for the particular equipment being pulled, so the equipment may not be activated. This procedure was not done, so the belt in question could still be activated.

Also, the contract between GE and Iowa Power states the contractor (GE) is to "[p]erform their work under the direction/supervision of the PURCHASER [Iowa Power]." The evidence indicates Iowa Power exercised control and supervision over at least some aspects of the independent contractor's work, including the conveyer belt in question.

Reading the jury instructions as a whole, *Sanders*, 421 N.W.2d at 522, we determine the trial court adequately instructed the jury on the existence of a duty on the part of Iowa Power. We further determine the jury instructions were supported by substantial evidence.

We affirm the trial court on this issue.

II. *Offset of Workers' Compensation Award*

■ Iowa Power argues it should receive a credit for Meck's $80,000 workers' compensation award. It further argues the trial court erred in excluding an exhibit of the special case settlement of Meck's workers' compensation case. The trial court found APM and its insurer may have a subrogation lien in this case, and Iowa Power was not entitled to a credit.

Iowa Power premises its argument on the assumption Meck will be exempt from the subrogation requirements of Iowa Code section 85.22. It contends this exemption will result in a double recovery for Meck. Iowa Code section 85.22 reads in pertinent part:

1. If compensation is paid the employee or dependent of the trustee of such dependent under this chapter, the employer by whom the same was paid, or the employer's insurer which paid it, shall be indemnified out of the recovery of damages to the extent of the payment so made, with legal interest, except for such attorney fees as may be allowed, by the

district court, to the injured employee's attorney or the attorney of the employee's personal representative, and shall have a lien on the claim for such recovery and the judgment thereon for the compensation for which the employer or insurer is liable. In order to continue and preserve the lien, the employer or insurer shall, within thirty days after receiving notice of such suit from the employee, file, in the office of the clerk of court where the action is brought, notice of the lien.

Iowa Code § 85.22(1).

We see nothing in this statute to support Iowa Power's contention of a double recovery. APM's insurer paid $80,000 in settlement for Meck's workers' compensation claim. APM's insurer has a valid subrogation lien against Meck's recovery up to the extent of its payment, provided it has filed the necessary notice of the lien in this action. *See id.* We affirm the trial court on this issue.

■ The second issue, the introduction of the settlement agreement, is controlled by the recent Iowa Supreme Court decision in *Schonberger v. Roberts*, 456 N.W.2d 201, 203 (Iowa 1990). In that case, the supreme court affirmed a trial court's exclusion of evidence of worker's compensation benefits. We quote the applicable portion:

> Under section 85.22 Schonberger must repay from his recovery his workers' compensation insurer any benefits he has received. The only conceivable purpose of informing the jury of those benefits is to invite the jury to reduce his recovery because of them. But, to any extent the jury does reduce the damage award because of the benefits, Schonberger is in effect paying, not once, but twice....

*Id.*

We determine in this case to inform the jury of Meck's $80,000 workers' compensation award would invite the jury to reduce his award by that amount. This is apparently what Iowa Power desired. However, this result is impermissible, especially in light of section 85.22's subrogation require-

ments. We affirm the trial court on this issue.

The trial court is affirmed on all issues.

Costs of this appeal are taxed to appellant Iowa Power.

AFFIRMED.