STATE of Iowa, Plaintiff–Appellee,

v.

Linda Kathleen TALBBET a/k/a Linda Kathleen Travis, Defendant–Appellant.

No. 98–0216.

Court of Appeals of Iowa.

Jan. 27, 1999.

Linda Del Gallo, State Appellate Defender, and David Arthur Adams, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, Brent Symens, County Attorney, and Thomas H. Miller, Assistant Attorney General, for appellee.

Heard by SACKETT, C.J., and HUITINK, STREIT, VOGEL, and MAHAN, JJ.

MAHAN, J.

Defendant Linda Talbbet appeals from her conviction, following a jury trial, of first-degree murder. She contends the district court erred in overruling her motion for judgment of acquittal due to allegedly insufficient evidence she possessed sufficient mental ability to act willfully, deliberately, and with premeditation. We affirm.

Several weeks prior to April 18, 1997, seventeen-year-old Felicia West came to live with Talbbet and her boyfriend, Brian Piep-

er. This arrangement was with the understanding that West would work as a nanny for Pieper and Talbbet's expected child.[1] On April 17, 1997, Talbbet informed a co-worker, Hayley Buss, about her suspicions West and Pieper were having sexual relations. Buss testified:

> She said if she ever had proof that they were sleeping together, that she'd shoot them both and cut them up and feed them to their pigs on the farm, and the pigs would eat them, bones and all, and that after she killed them, that she may move all her own stuff out and then start the house on fire or get rid of all her boyfriend and this other girl's stuff, and it would be weeks before anybody would realize they were gone.

West had kept a diary which described her relationship with Pieper. She discovered the diary missing on the morning of April 18, 1997.[2] Talbbet appeared to help West and her two friends, Jamie Pratt and Amy Dunn, search for the diary. The search was unsuccessful. West then left to spend the day with her friends and Talbbet went to work.

Talbbet read passages from the diary later that morning. She discussed the situation with Buss and stated, "Here's my proof." Buss testified Talbbet told her to inform the supervisor that Talbbet "had to get out of there, and if I heard of anyone getting arrested that night, I'd know it was her because she'd killed them both." Talbbet also told Buss she would hide her car when she got home so she could catch them by surprise.

Talbbet returned home. She read portions of the diary again. She then destroyed certain items in the house, slashed the waterbed, and burned some clothes in a wood burning fireplace. She also began packing a suitcase.

West and her two friends then returned to the house. Talbbet saw them coming and met West at the front door with a loaded .38 caliber revolver. Talbbet opened the door, raised the pistol, and fired one shot that struck West just below the right eye.[3] She pointed the gun at West's friends and ordered them to leave. Talbbet then poured gasoline around the house and set it on fire.[4]

Talbbet drove to a convenience store to purchase cigarettes and then went to the Hampton police station where she turned herself in and confessed to the shooting.

**■ I. STANDARD OF REVIEW.** Denial of a motion for judgment of acquittal is reviewed on a "substantial evidence" standard. *State v. Schrier,* 300 N.W.2d 305, 306 (Iowa 1981). The evidence is viewed in a light most favorable to the State. *State v. LaPointe,* 418 N.W.2d 49, 51 (Iowa 1988). The reviewing court must consider all of the evidence and not just the evidence which supports the verdict. *State v. Blair,* 347 N.W.2d 416, 419 (Iowa 1984). Substantial evidence is "such evidence as could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt." *State v. Robinson,* 288 N.W.2d 337, 339 (Iowa 1980).

**■ II. DENIAL OF MOTION FOR JUDGMENT OF ACQUITTAL.** Talbbet admits she shot West and that West died as a result thereof. The only issue Talbbet raises on appeal is the evidence was insufficient to prove she possessed sufficient mental capacity to act willfully, deliberately, and with premeditation.

> To deliberate is to weigh in one's mind or to consider. To premeditate is to think or ponder upon a matter before action. Premeditation and deliberation may not be presumed. It may not be inferred from intent. However premeditation and deliberation need not exist for any particular length of time. In finding premeditation and deliberation the trier of facts may consider the fact a defendant has selected a deadly weapon, such as the gun involved here, with an opportunity to deliberate where he thereafter uses it in a deadly manner.

*State v. Fryer,* 226 N.W.2d 36, 41 (Iowa 1975). Premeditation and deliberation may be proven by circumstantial evidence in any

---

1. Talbbet was not pregnant and has previously undergone a tubal ligation.

2. Talbbet had taken the diary.

3. Medical evidence revealed West was killed instantly.

4. West's body was burned beyond recognition.

of three ways: (1) evidence the defendant planned activity which was directed toward the killing; (2) evidence of motive which might be inferred from the relationship between defendant and victim; and (3) evidence about the nature of the killing. *Blair,* 347 N.W.2d at 421. In addition, the use of a deadly weapon "accompanied by an opportunity to deliberate" is evidence of premeditation, deliberation, and intent to kill. *Id.* Talbbet's admissions, confession, and use of a deadly weapon is overwhelming evidence she acted willfully, deliberately, and with premeditation.

▉ Talbbet, however, raised a defense of diminished responsibility. A jury is allowed to consider evidence of a defendant's mental condition on the issue of willfulness, deliberation, and premeditation. *State v. Gramenz,* 256 Iowa 134, 126 N.W.2d 285, 290 (1964).

▉ Talbbet called two experts in her case. Dr. Marvin Piburn, a psychiatrist, testified as follows:

Q. And in this case we're not even talking about someone who's psychotic? A. No.

Q. At least at any time you've seen her? A. No.

Q. We're talking about somebody who has some personality character problems in large part? A. And behavior problems as described, yes.

Q. With all of the problems that you saw that Linda Talbbet had when you saw her on those two occasions, were any of those problems of a nature that would have rendered her incapable of knowing what she was doing? A. No.

Q. Were any of those problems that Linda Talbbet had on the two occasions you saw her of the nature that would have rendered her incapable of thinking about her own behavior? A. No.

Q. Or planning her own behavior? A. She would be able to plan.

The second witness called by the defense was psychologist Dan Rogers. He testified Talbbet suffered from a personality disorder, but he was unable to form any opinion on the issue of deliberation and premeditation.

The State called Michael Taylor, a psychiatrist, as its expert witness. Dr. Taylor agreed Talbbet suffered from a personality disorder. However, he found Talbbet did not suffer from any "diagnosable psychiatric disorder." When questioned about the issue of deliberation, premeditation, and intent to kill, Dr. Taylor stated Talbbet was "fully capable" of acting with deliberation and premeditation and was "fully capable" of forming an intent to kill.

We have reviewed the record and conclude the district court did not err in overruling Talbbet's motion for judgment of acquittal. The evidence is overwhelming Talbbet possessed sufficient mental ability to act willfully, deliberately, and with premeditation.

**AFFIRMED.**

ZIMMER, J., takes no part.