## IN THE COURT OF APPEALS OF IOWA

No. 21-1100
Filed October 5, 2022

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**DIAVANTAE STEPPHON DAVIS,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Wyatt Peterson, Judge.

Diavantae Davis appeals his convictions for murder in the first degree, intimidation with a dangerous weapon with intent to injure or provoke, and going armed with intent. **AFFIRMED.**

S.P. DeVolder of The DeVolder Law Firm, P.L.L.C., Norwalk, and William L. Kutmus and Trever Hook of Kutmus, Pennington & Hook, P.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Heard by Bower, C.J., Tabor, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**GAMBLE, Senior Judge.**

Diavantae Davis appeals his convictions for murder in the first degree, intimidation with a dangerous weapon with intent to injure or provoke, and going armed with intent. He argues the district court erred in instructing the jury on his duties with respect to his justification defense and the evidence is insufficient to support his conviction for murder in the first degree. We reject his arguments and affirm.

## I. Background Facts and Proceedings

On the evening of September 7, 2019 and into the early morning hours of September 8, a group of housemates hosted a party at their residence in Burlington, Iowa. Alexandria, one of the party's hosts and a resident of the home, estimated about forty-five people were at the party, including Reynaldo Villarreal. Most of the partygoers were in the yard of the home. At a certain point, Christian appeared at the party. Christian was involved in an issue during a previous party at the home earlier that summer. Alexandria met Christian outside. She told him he was not welcome at the party and he needed to leave the premises. Christian then left the party while expressing his disagreement.

Christian soon returned to the party accompanied by Timothy. Alexandria met the pair outside to tell them to leave the party. She thought Timothy was being aggressive in refusing to leave. So she asked Villarreal for assistance in convincing the pair to leave. Villarreal also told the pair that Christian was not allowed at the party and they needed to leave. Christian and Timothy insisted on staying and argued with Villarreal. A crowd of partygoers began to form around them on the landing in front of the house as the argument became more heated.

Davis and two of his friends arrived at the party during this argument. Davis's group joined the crowd, standing behind Christian and Timothy. Davis inserted himself into the already heated situation, siding with Christian and Timothy. Christian and Timothy both testified Villarreal showed them he had a handgun in his belt early in the argument and he later held the handgun at his side without pointing it at anyone. Arturo, another partygoer, testified Villarreal pulled out a handgun during the argument, loaded a round in the chamber, and pointed it straight down at his side. Other partygoers testified they never saw Villarreal with a firearm—or even knew he had one—during the party. Alexandria testified Davis was the only one to mention having a firearm during the argument. Arturo testified Davis made threats during the argument about his group being "killers." Another witness similarly testified Davis said "they ain't no real killers; I'm a real killer." Eventually, everyone in Christian's group—including Davis—started to leave. Davis slipped down a hill in the yard next to the front steps. As Villarreal stood on the landing and continued to tell them to leave, Davis fired his handgun six times. Villarreal fell forward down the hill.

Burlington police responded to the home around 1:40 a.m. on September 8. Officers found a group of people in front of the home gathered around Villarreal. Villarreal was on the ground and unresponsive with an apparent gunshot wound. He was transported to the hospital and pronounced dead at approximately 2:13 a.m. Officers eventually found a handgun with a round in the chamber in the grass next to the spot where they found Villarreal's body. After checking serial numbers, officers determined the handgun belonged to Luis, one of the residents of the home where the party occurred. Luis testified he did not know how Villarreal

obtained his handgun that night. An autopsy later confirmed Villarreal sustained a gunshot wound to his chest. Detectives spent a substantial amount of time over the next couple of days searching the wooded area near the crime scene using a metal detector in an attempt to find the firearm used in the homicide. The weapon used to shoot Villarreal was never recovered.

After speaking to witnesses and reviewing video from the home's security system, officers identified Davis as the shooter. On September 9, Davis voluntarily went to the Burlington police department for an interview. During the interview, Davis acknowledged walking up to the party. But he claimed he left the party when he saw a group of people arguing, including one person waving a handgun. He claimed he was down the street and walking away from the home when he heard gunshots. He also denied owning or possessing a firearm. At the conclusion of the interview, officers arrested Davis for Villarreal's killing.

Davis proceeded to a jury trial on June 15 to 25, 2021. The State's evidence included testimony from several witnesses at the party and members of law enforcement. Davis testified in his defense. During trial, Davis admitted owning the handgun he used to shoot Villarreal and claimed he was justified in doing so. According to Davis's testimony, he and his friends tried going to the party but Villarreal and others at the party stopped them in the front yard. Villarreal's group told Davis's group they were not welcome. Villarreal specifically said "you n-----s[1] need to leave" while holding a handgun at his side. After some arguing, Davis and his group started to leave. Davis slipped and fell. As he got up, Davis heard

---

[1] Davis and his two friends who were with him that night are African American.

Villarreal cock his handgun. Davis reached in his pocket and grabbed his gun. When Davis turned to look at him, Villarreal said "you guys need to leave or I'm going to use it." Davis was backing up to the street. Villarreal moved his weapon back and forth like he was turning off the safety. Villarreal then pointed his gun in the direction of Davis and his group. Fearing Villarreal was about to fire upon his group, Davis fired multiple rounds, hitting Villarreal.

The jury rejected Davis's justification claim and found him guilty of murder in the first degree, intimidation with a dangerous weapon with intent to injure or provoke, going armed with intent, and possession of a firearm by a felon. The district court sentenced him to life in prison for murder, ten years in prison for intimidation, five years in prison for going armed, and five years in prison for possession of a firearm, with the latter three sentences running consecutively to each other and concurrently with the life-in-prison sentence. Davis appeals his convictions for murder, intimidation, and going armed.[2]

## II. Standard of Review

We review "challenges to jury instructions for the correction of legal error. In conducting our review, we review the instructions 'as a whole to determine their accuracy.'" *State v. Mathis*, 971 N.W.2d 514, 519 (Iowa 2022) (citations omitted). "We review the trial court's instructions 'to determine whether they correctly state the law and are supported by substantial evidence.'" *State v. Walker*, 600 N.W.2d 606, 608 (Iowa 1999) (quoting *State v. Thompson,* 570 N.W.2d 765, 767 (Iowa 1997)).

---

[2] Davis does not appeal his conviction for being a felon in possession of a firearm.

We review claims a verdict is not supported by substantial evidence for correction of errors at law. *Mathis*, 971 N.W.2d at 516. "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* at 516–17. "In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* at 517 (quoting *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017)).

### III. Analysis

#### A. Jury instruction—Justification

##### 1. Substantial Evidence

"Justification is a statutory defense that permits a defendant to use reasonable force to defend himself or herself." *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 869 (Iowa 2019). "A person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from any actual or imminent use of unlawful force." Iowa Code § 704.3 (2019). "Reasonable force" is

> that force and no more which a reasonable person, in like circumstances, would judge to be necessary to prevent an injury or loss and can include deadly force if it is reasonable to believe that such force is necessary to avoid injury or risk to one's life or safety or the life or safety of another, or it is reasonable to believe that such force is necessary to resist a like force or threat.

*Id.* § 704.1(1). The marshaling instructions for murder, intimidation, and going armed all required the State to prove by evidence beyond a reasonable doubt that

Davis acted without justification in order to find him guilty of each respective charge.

"As with any affirmative defense, the district court must instruct the jury on justification if substantial evidence supports the theory." *State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020). "The defendant bears the initial burden of producing sufficient evidence to support the instruction." *Id.* "Once that threshold is met, the burden shifts to the State to prove lack of justification beyond a reasonable doubt." *Id.* "Iowa law requires a court give a requested instruction as long as the instruction is a correct statement of law, is applicable to the case, and is not otherwise embodied elsewhere in the instructions." *State v. Kraai*, 969 N.W.2d 487, 492 (Iowa 2022) (citation omitted).

In response to Davis's claim of justification, the district court issued a series of instructions on justification. As relevant here, instruction no. 28A states in its entirety:

> After using deadly force, the defendant had the following duties:
> 1. To not intentionally destroy, alter, conceal, or disguise physical evidence relating to the defendant's use of deadly force;
> 2. To not intentionally intimidate a witness into refusing to cooperate with an investigation of the defendant's use of deadly force; and
> 3. To not intentionally induce another person to alter testimony about the defendant's use of deadly force.
>
> You may consider whether the defendant complied with these duties when deciding whether deadly force was justified.

Davis objected to instruction no. 28A, specifically claiming it was not supported by substantial evidence.[3] *See State v. Schuler*, 774 N.W.2d 294, 297

---

[3] Our supreme court found an instruction based on Iowa Code section 704.2B(1) impermissibly violated the defendant's right to remain silent under the Fifth

(Iowa 2009) (stating jury instructions must be "correct statements of the law and . . . supported by substantial evidence" (quoting *State v. Liggins*, 557 N.W.2d 263, 267 (Iowa 1996))).

Instruction no. 28A reflects Iowa Code section 704.2B(2), which states:

> The person using deadly force shall not intentionally destroy, alter, conceal, or disguise physical evidence relating to the person's use of deadly force, and the person shall not intentionally intimidate witnesses into refusing to cooperate with any investigation relating to the use of such deadly force or induce another person to alter testimony about the use of such deadly force.

Because section 704.2B and instruction no. 28A are substantively identical, the instruction is a correct statement of law. *See Kraai*, 969 N.W.2d at 491.

However, Davis maintains the court erred by giving instruction no. 28A because there is no evidence he violated any of the enumerated duties. The State concedes "there was little evidence" Davis either intimidated a witness into refusing to cooperate or induced another person to alter their testimony. Thus, the State apparently concedes there was no evidence to support finding Davis violated two of the three duties enumerated in instruction no. 28A. However, the State argues Davis's statements during his interview at the police station violated his duty not to intentionally conceal physical evidence. And the State contends the district court

---

Amendment to the United States Constitution. *State v. Gibbs*, 941 N.W.2d 888, 894–901 (Iowa 2020). To the extent Davis claims instruction no. 28A also violates his Fifth Amendment rights, he did not raise this argument below so it is not preserved for our review. *See State v. Zacarias*, 958 N.W.2d 573, 587 (Iowa 2021) (refusing to consider the defendant's constitutional claim after the defendant failed to raise the claim in district court).

is required to instruct on the duties of section 704.2B(2) in every case where the defense of justification involves the use of deadly force.[4]

In 2017 the Iowa legislature amended the justification statute to include new stand-your-ground provisions. 4 Robert R. Rigg, *Iowa Practice Series: Criminal Law* § 2:21 (Oct. 2021 update). The amendments expanded the defense of justification by deleting existing language regarding alternative course of action and adding provisions "for the erroneous estimation of the danger presented and force necessary as long as there is a 'reasonable basis for the belief' and the person acts 'reasonably in the response' to a perceived threat." *Id.* (quoting Iowa Code § 704.1). "Significantly, the amendment provides a person does not have a duty to retreat as long as a person 'is not engaged in illegal activity' and is in a place where they were 'lawfully present.'" *Id.* (quoting Iowa Code § 704.1). In this context, the legislature added new section 704.2B stating the duties of a person using deadly force. *See* 2017 Iowa Acts ch. 69, § 40. Section 704.2B(2) provides:

> The person using deadly force shall not intentionally destroy, alter, conceal, or disguise physical evidence relating to the person's use of deadly force, and the person shall not intentionally intimidate

---

[4] The State relies on commentary to the Iowa Criminal Jury Instructions. *See* Iowa State Bar Ass'n, Iowa Crim. Jury Instruction 400.1 cmt. (2021) (stating if deadly force was used, uniform instruction "400.7 (Deadly Force—Duties) must then be used."). Unlike other instructions, the comment to uniform instruction 400.7 does not require the court to "[u]se only that language that is supported by the evidence." *Compare* Iowa State Bar Ass'n, Iowa Crim. Jury Instruction 400.6 cmt. (Deadly Force—Presumptions), *with* Iowa State Bar Ass'n, Iowa Crim. Jury Instruction 400.7 cmt. (Deadly Force—Duties). While we are not bound by them, "we are slow to disapprove of the uniform jury instructions." *State v. Booth-Harris*, 942 N.W.2d 562, 580 (Iowa 2020) (quoting *State v. Ambrose*, 861 N.W.2d 550, 559 (Iowa 2015)). Instruction no. 28A closely tracks section 704.2B(2) and is identical to uniform instruction 400.7. It is a correct statement of the law. However, as guidance to the bench and bar, we express our disagreement with the commentary suggesting 400.7 must be used in every case involving deadly force regardless of whether it is supported by the evidence.

witnesses into refusing to cooperate with any investigation relating to the use of such deadly force or induce another person to alter testimony about the use of such deadly force.

"The law on giving of jury instructions in Iowa is well developed." *Meck v. Iowa Power & Light Co.*, 469 N.W.2d 274, 276 (Iowa Ct. App. 1991). "Jury instructions are designed to explain the applicable law to the jurors so the law may be applied to the facts proven at trial. Submission of issues that have no support in the evidence to the jury is error." *Id.* (internal citation omitted). "Requested instructions that are not related to the factual issues to be decided by the jury should not be submitted even though they may set out a correct statement of the law." *See Vachon v. Broadlawns Med. Found.*, 490 N.W.2d 820, 822 (Iowa 1992). "Evidence is substantial enough to support a requested instruction when a reasonable mind would accept it as adequate to reach a conclusion." *Bride v. Heckart*, 556 N.W.2d 449, 452 (Iowa 1996).

"In construing statutes, we assume the legislature is familiar with the existing state of the law when it enacts new legislation." *State v. Adams*, 810 N.W.2d 365, 370 (Iowa 2021). "Further, '[a] statute will not be presumed to overturn long-established legal principles, unless that intention is clearly expressed or the implication to that effect is inescapable.'" *Id.* (alteration in original) (citation omitted). In its codification of the duties of a person using deadly force in section 704.2B(2), we see no clear expression or implication the legislature intended that courts must instruct juries on these duties if they are not supported by substantial evidence. Consistent with long-established principles, we conclude the legislature intended the violation of a duty imposed by this statute must be

supported by substantial evidence before it can be properly submitted to a jury considering the defense of justification.

The State produced no evidence that Davis intimidated a witness into refusing to cooperate with an investigation of his use of deadly force or that he intentionally induced another person to alter testimony about his use of deadly force. Accordingly, we find there is not substantial evidence to support paragraphs 2 and 3 of Instruction 28A.

Further, while there is evidence Davis lied during his police interview about his use of a firearm and the police never located the gun, that evidence alone is not sufficient to support a finding that Davis intentionally acted to destroy, alter, conceal, or disguise physical evidence relating to his use of deadly force as required by paragraph 1 of instruction no. 28A. *See Bride*, 556 N.W.2d at 452. There is no evidence that Davis actively hid or concealed the weapon. *Cf. State v. Thornton*, 498 N.W.2d 670, 673–74 (Iowa 1993) (finding substantial evidence where the defendant "left the scene immediately after the shooting" and "[w]ent home and hid his gun in the basement," concluding a "jury could rationally believe these were not the actions of someone who honestly believed he acted in self-defense"); *State v. Jonas*, No. 15-1560, 2017 WL 706204, at *5 (Iowa Ct. App. Feb. 22, 2017) (noting the defendant's actions were "inconsistent with someone who was acting in self-defense" because he "avoided the police . . . by lying to them throughout the initial interviews," and "disposed of his weapon by throwing it over a bridge into the river,"); *see also State v. Heckethorn*, No. 20-0243, 2021 WL 3392802, at *3 (Iowa Ct. App. Aug. 4, 2021) (applying the stand-your-ground amendments and finding, "After the shooting, Heckethorn fled the scene,

concealed the AR-15 in a closet at his mother's house, and told the police he was not involved in the shooting. Heckethorn's behavior after the incident demonstrates his consciousness of guilt"). Again, "[t]he legislature is presumed to know the state of the law, including case law, at the time it enacts a statute." *State v. Jones*, 298 N.W.2d 296, 298 (Iowa 1980). Based upon our case law, the codification of a defendant's duty to not intentionally destroy, alter, conceal, or disguise physical evidence relating to his use of deadly force in section 704.2B(2) requires an affirmative act beyond a false denial of participation in the crime during a police interview.

The State produced no evidence that Davis did anything to hide or get rid of the gun. The police did not ask Davis if he hid the gun when he initially denied involvement in the shooting, and the prosecutor did not cross-examine Davis about hiding or disposing of the weapon at trial. And the State did not introduce any other evidence indicating Davis intentionally destroyed, altered, concealed, or disguised the firearm used in the homicide. Therefore, we conclude instruction no. 28A was not supported by substantial evidence and the district court erred in submitting it. *See Meck*, 469 N.W.2d at 276.

    2.  Harmless Error

The State argues any error in instruction no. 28A was harmless. In *Kraai*, 969 N.W.2d at 496–97, our supreme court stated the harmless error standard:

> "Error in giving or refusing to give a jury instruction does not warrant reversal unless it results in prejudice to the complaining party." When a court erroneously gives or refuses a jury instruction, "we presume prejudice and reverse unless the record affirmatively establishes there was no prejudice." "When the error is not of constitutional magnitude, the test of prejudice is whether it sufficiently appears that the rights of the complaining party have

been injuriously affected or that the party has suffered a miscarriage of justice." The presumption of prejudice is overcome when the jury received "strong evidence" of a defendant's guilt.

(Internal citations omitted.)

Instruction no. 28A did not prejudice Davis. While the instruction enumerated the duties of a person using deadly force, it provided, "You may consider whether the defendant complied with these duties when deciding whether deadly force was justified." The district court allowed the parties to argue the reasonable inferences to be drawn from this instruction. No inference adverse to Davis can be reasonably drawn from the lack of evidence that he breached any of the enumerated duties of instruction no. 28A. To the contrary, compliance with these duties implies that deadly force was justified.

But more importantly, neither party raised any of the three enumerated duties during their arguments and Davis's compliance with these duties was not the fighting issue at trial. The issue was whether, under the circumstances existing at the time of the incident, the State proved Davis did not have a reasonable belief deadly force was necessary to defend himself from imminent danger of being shot by Villarreal. *See Lorenzo Baltazar*, 935 N.W.2d at 869. On this point, the State produced strong evidence Davis was not justified. Davis injected himself into a heated situation between Timothy, Christian, and Villarreal. During the confrontation, Davis announced he was armed and he was a "killer." Arturo testified Villarreal cocked his gun and pointed it down. Villarreal continued to tell Davis and his group to leave. Davis slipped on the hill, got up, pulled his gun, turned around, raised his weapon, lowered it, raised it again, and shot Villarreal. While Davis testified that after he slipped, he heard Villarreal cock his gun and that

Villarreal pointed it in his direction as he was leaving, the witnesses did not corroborate Davis's version of the events. And the surveillance video demonstrated that Villarreal was not pointing a gun at Davis's group when Davis shot him. *See Gibbs*, 941 N.W.2d at 900 ("This was the rare case where the murder was captured on video.").

We conclude strong evidence established Davis did not have a reasonable belief deadly force was necessary to defend himself from imminent danger of being shot by Villarreal. And since this was the fighting issue, we are not convinced the jury was distracted by the duties of a person using deadly force listed in instruction no. 28A. *See Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 904 (Iowa 2015) (finding new trial was not warranted where erroneous instruction did not mislead or confuse the jury in light of the totality of the instructions). Davis was not injuriously affected by instruction no. 28A. It did not result in a miscarriage of justice. *See Kraai*, 969 N.W.2d at 496-97.

*B. Substantial Evidence of Premeditation and Specific Intent*

The marshaling instruction for murder in the first degree required the jury to find Davis "acted willfully, deliberately, premeditatedly and with specific intent to kill" Villarreal. *See* Iowa Code § 707.2(1)(a) (setting forth the elements of murder in the first degree). Davis argues the record does not contain substantial evidence he acted with premeditation and a specific intent to kill Villarreal.

"To premeditate is to think or ponder upon a matter before action." *State v. Talbbet*, 590 N.W.2d 732, 734 (Iowa Ct. App. 1999). "Our first-degree murder cases have long held that the use of a deadly weapon supports an inference of malice, and when accompanied by an opportunity to deliberate, also supports an

inference of deliberation and premeditation." *State v. Reeves*, 636 N.W.2d 22, 25 (Iowa 2001); *see also State v. Green*, 896 N.W.2d 770, 780 (Iowa 2017) ("[A] rational juror could infer that one who uses a dangerous weapon intends to cause physical harm, and even to kill."); *State v. Frazer*, 267 N.W.2d 267 N.W.2d 34, 39 (Iowa 1978) ("The use of a deadly weapon accompanied by an opportunity to deliberate, even for a short time, is evidence of malice, deliberation, and premeditation.").

"[T]he term 'specific intent' is used to 'designate a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime." *State v. Buchanan*, 549 N.W.2d 291, 294 (Iowa 1996) (citation omitted). "Specific intent not only requires the defendant to be aware of doing an act, but doing it with a specific purpose in mind." *State v. Guerrero Cordero*, 861 N.W.2d 253, 259 (Iowa 2015), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016). "When a person intentionally uses a deadly weapon in killing a victim, the jury may infer that he had formed the specific intent to kill." *State v. Wilkins*, 346 N.W.2d 16, 20 (Iowa 1984). "[A]n actor will ordinarily be viewed as intending the natural and probable consequences that usually follow from his or her voluntary act. *State v. Taylor*, 689 N.W.2d 116, 132 (Iowa 2004).

Much of the same evidence that convinces us Davis suffered no prejudice from the erroneous instruction also provides substantial evidence to support his conviction for first-degree murder. Davis relies on his testimony that he was justified in shooting Villarreal. A major part of his justification defense was his claim Villarreal cocked his gun and pointed it at Davis's group as they tried to leave.

Indeed, police found a handgun with a round in the chamber in the grass next to Villarreal's body after the shooting. While the witnesses varied in whether they saw Villarreal display a firearm during the argument, no witness other than Davis testified Villarreal pointed a firearm at anyone before the shooting.

The security video also conflicts with critical parts of Davis's testimony. The security video shows Davis and Villarreal in a heated argument with each other as part of their respective groups. The two groups continue arguing as Davis and his group walk away from the home. Davis slips in the grass while walking away. When Davis reaches the street, he draws his handgun. Davis is the only person shown in the video clearly holding a firearm, though we recognize it is possible Villarreal may have held a firearm in a way not caught on video. Davis raises his weapon toward Villarreal's group, lowers his weapon, raises his weapon again, and fires six times. Villarreal then falls forward and tumbles toward the street. Despite Davis's claim Villarreal pointed a handgun in his direction, the video does not show Villarreal holding—much less pointing—a firearm at any time.

Davis's testimony conflicted with the other evidence in the record, including his own statements during his interview with police and the testimony of Villarreal's friend Arturo. Thus, "the jury was not required to accept all of defendant's testimony." *State v. Hall*, 214 N.W.2d 205, 210 (Iowa 1974). Putting the evidence together and viewing it in the light most favorable to the State, the jury could reasonably conclude Davis took part in a heated argument with Villarreal's group, threatened to kill someone with his handgun, walked away while continuing to argue, raised his handgun, and hesitated before opening fire on Villarreal and his group. The witness testimony and security video provide substantial evidence to

support finding Davis acted with premeditation and specific intent to kill. *See Mathis*, 971 N.W.2d at 516–17. These elements of murder in the first degree are supported by substantial evidence. *Id.*

## IV. Conclusion

The jury instruction about the duties Davis was required to perform in order to claim a justification defense is a correct statement of law. While it was not supported by substantial evidence, the error was harmless. The witness testimony and security video provide substantial evidence to support finding Davis acted with premeditation and a specific intent to kill. Therefore, we affirm his convictions.

**AFFIRMED.**