# IN THE COURT OF APPEALS OF IOWA

No. 22-1435
Filed December 18, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JOHN EDWARD SANDERS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Fae Hoover Grinde, Judge.

John Sanders appeals his convictions for assault causing bodily injury, assault with intent to commit serious injury, and two counts of second-degree robbery. **AFFIRMED.**

Thomas M. McIntee, Williamsburg, for appellant.

Brenna Bird, Attorney General, and Benjamin Parrott, Assistant Attorney General, for appellee.

Considered by Buller, P.J., Langholz, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**BOWER, Senior Judge.**

John Sanders appeals his convictions for assault causing bodily injury, assault with intent to commit serious injury, and two counts of second-degree robbery. Sanders challenges the sufficiency of the evidence supporting his convictions and the marshaling instruction on second-degree robbery. Sanders further claims the court erred by denying his motion to continue sentencing and by failing to ensure a valid waiver of his right to testify. Upon our review, we affirm.

## I.   *Background Facts and Proceedings*

Kevin Fitzsimmons has worked at A-1 Disposal for years. In late 2020, Sanders began working at A-1 Disposal. Fitzsimmons was in charge of training Sanders to be a truck driver, and the two rode together to jobsites. Fitzsimmons "considered [Sanders] a friend" and "a lot of times [he] would pay for [Sanders's] meal" when they spent long days on the road. Sanders asked Fitzsimmons for money on several occasions, including an instance when he said he needed $980 so he could bond his girlfriend out of jail. Fitzsimmons was sympathetic to Sanders's elaborate story, so he gave Sanders the money. At one point, Fitzsimmons hired Sanders to do some work at his house to pay off his debt. Sanders came over and Fitzsimmons gave him $1700 to buy the materials for the project. But Sanders took the money and did not return to complete the work.

On Friday, November 19, 2021, Sanders came over after Fitzsimmons got off work. Fitzsimmons "had just gotten paid," which Sanders knew because A-1 Disposal issued paychecks every Friday. Sanders asked for money because he had "been in the hospital being sick." Fitzsimmons said he could lend "some money" but not very much because he had to pay his mortgage. Fitzsimmons

started to retrieve cash from his billfold when Sanders "stepped up and grabbed the billfold out of [Fitzsimmons's] hand." Fitzsimmons pleaded, telling Sanders the $700 in his billfold was his mortgage payment. Sanders responded, "I don't care. I need this money"; "I've been in a gang for 40 years"; "Don't fuck with me." Then Sanders left with the money.

Fitzsimmons "was in shock." He did not call the police because Sanders said if he told anyone then "he would come back and burn the house down with me in it." Fitzsimmons was "worried about what he said" and thought "no money amount is worth my life or the life of my pet." But Fitzsimmons did report the incident a few days later, after receiving advice from his boss to "call the police and have a report made in case the incident ever happens again."

Which it did, on the evening of Friday, December 17. It was dark when Fitzsimmons arrived home from work. He was barely inside his kitchen, when "an arm came around [his] throat and a hand on the back of [his] head forcing [his] head down towards the arm, which was choking [him]." He knew it was Sanders, and he asked, "John why are you doing this." Sanders asked, "[W]here is your billfold." Fitzsimmons responded, "I forgot it at work." A tussle ensued, and Sanders brought Fitzsimmons down to the ground as Fitzsimmons struggled to breathe. Sanders threatened to "kill" Fitzsimmons and demanded the billfold. Fitzsimmons relented and retrieved his billfold from his pocket. Sanders grabbed it, forced Fitzsimmons to roll over and face the floor, and ordered him to not move or he would kill him. Sanders left with the billfold and hid Fitzsimmons's cell phone and house and car keys in the mailbox. Sanders found help from a neighbor, who called the police.

The State filed a trial information charging Sanders with first-degree burglary, in violation of Iowa Code sections 713.1 and 713.3 (2021); assault with intent to inflict serious injury, in violation of sections 708.1(2) and 708.2(1); and two counts of second-degree robbery, in violation of sections 711.1 and 711.3. Sanders entered a plea of not guilty and the case proceeded to trial. The jury found Sanders guilty on the two robbery counts and guilty on lesser-included assault offenses on the remaining counts. The district court entered judgment and sentence, and Sanders appeals. Additional facts will be discussed below as relevant to Sanders' claims on appeal.

## II. Sufficiency of the Evidence

We review challenges to the sufficiency of the evidence supporting a conviction for correction of errors at law. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). As the court stated in *Crawford*,

> When evaluating the sufficiency of the evidence, we consider whether, taken in the light most favorable to the State, the finding of guilt is supported by substantial evidence in the record. There is substantial evidence if the evidence would convince a rational fact finder the defendant is guilty beyond a reasonable doubt. We draw all legitimate inferences in support of the verdict. However, evidence which merely raises suspicion, speculation, or conjecture is insufficient. The evidence must at least raise a fair inference of guilt as to each essential element of the crime.

*Id.* at 516–17 (cleaned up).

Sanders does not identify which elements of which counts he is challenging. Instead, he recites defense counsel's motion for judgment of acquittal, which generally claims "[t]he State must prove every fact necessary to constitute the crime with which the defendant is charged," and asks us to "reverse Sanders's convictions and remand this matter for a new trial." Although his claim is raised

under the issue heading "whether the trial court erred by failing to grant to motion for judgment of acquittal," Sanders points to no specific part of the court's ruling he disputes.

We acknowledge "[a] defendant's trial and the imposition of sentence following a guilty verdict are sufficient to preserve error with respect to any challenge to the sufficiency of the evidence raised on direct appeal." *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). However, once on appeal, there must be "enough there to allow us to address the claim without becoming advocates ourselves." *State v. Flores*, No. 22-0426, 2023 WL 6293840, at *3 n.2 (Iowa Ct. App. Sept. 27, 2023); *Inghram v. Dairyland Mut. Ins.*, 215 N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy. This role is one we refuse to assume."). This claim is not sufficiently developed to allow us to review.[1] We turn to Sanders's remaining claims.

### III. Jury Instruction

On Count II, relating to the incident taking place on November 19, the jury was instructed as follows:

> The State must prove all of the following elements of Robbery in the Second Degree as charged in Count Two:
> 1. On or about the 19th of November, 2021, the defendant had the specific intent to commit a theft.
> 2. In carrying out his intention or to assist him in escaping from the scene, with or without the stolen property, the defendant:

---

[1] Even if it were, we observe the State offered overwhelming evidence conflicting with Sanders's claim. And the jury was tasked with reconciling any inconsistencies and making its determination, which we ordinarily will not disturb. *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005) (noting it is not our role on appeal "to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury" (citation omitted)).

a. threatened Kevin Fitzsimmons with or purposely put Kevin Fitzsimmons in fear of immediate serious injury or
b. threatened to immediately kill Kevin Fitzsimmons.

During discussions over jury instructions, defense counsel objected to the proposed instruction, arguing "[n]one of the alternatives under subsection 2 of the instruction actually would fit in this case and, as a result, robbery shouldn't be submitted at all for the November 19th event." Specifically, defense counsel maintained because Sanders's threats related to an action he could take in the future (*i.e.*, "come back and burn your house down with you in it"), "that necessitates some length of time between the threat and when it actually occurred, so it's not immediate." The State resisted, stating in part:

> I believe that there is information in the record specifically related to the threats that the Defendant made to [Fitzsimmons], though conditional, created in Mr. Fitzsimmons[] fear of immediate serious injury and that his fear of that injury facilitated the Defendant's escape and accomplishment of the theft that was being committed during the robbery because Mr. Fitzsimmons had a genuine fear, as he testified, that if he reported it, tried to call for help, did anything other than just take it from the Defendant, that he would be killed, that his house would be burned down with him in it. I do think that that is a question for the jury, for them to decide if that fear, a conditional fear is immediate or immediate enough for them to find guilt in that specific count.

The district court overruled the defense's objection:

> The Court will overrule and instruct regarding both counts of robbery in the second degree. The Court has considered the portion of the record that included Mr. Fitzsimmons'[s] testimony with regard to the November 19, 2021 allegation of robbery in the second degree, the Court has considered the portion of Mr. Fitzsimmons'[s] testimony regarding that incident where he described . . . being fearful of looking out his door, being fearful of contacting the police, based on comments he attributed to Mr. Sanders, and the Court considers that to generate a question that is appropriate for the jury to resolve. . . . I will instruct the jury regarding the robbery second allegation stemming from the November 19, 2021 incident in the living room and find that that's appropriate to instruct the jury on that particular

offense given the testimony we heard from Kevin Fitzsimmons, specifically that he perceived the threat as an immediate threat, evidenced by his lack of action to contact the police or to even leave his home—or look out the door.

Sanders claims the district court erred by submitting the challenged instruction and by "declin[ing] his proposed instruction." According to Sanders, "The evidence presented by the State did not support this instruction allowed by the court over defense counsel's objection, causing prejudice, and constituting reversible error."

We review "challenges to jury instructions for the correction of legal error. In conducting our review, we review the instructions 'as a whole to determine their accuracy.'" *State v. Mathis*, 971 N.W.2d 514, 519 (Iowa 2022) (citations omitted). "We review the trial court's instructions 'to determine whether they correctly state the law and are supported by substantial evidence.'" *State v. Walker*, 600 N.W.2d 606, 608 (Iowa 1999) (quoting *State v. Thompson,* 570 N.W.2d 765, 767 (Iowa 1997)).

At the outset, we note Sanders did not propose a different instruction for Count II. *See State v. Booth-Harris*, 942 N.W.2d 562, 581 (Iowa 2020) ("The court is not required to give any particular form of an instruction; rather, the court must merely give instructions that fairly state the law as applied to the facts of the case." (cleaned up)). And the instruction given is a proper statement of the law. *See* Iowa Code § 711.1 ("A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property: . . . b. Threatens another with or purposely puts

another in fear of immediate serious injury [or] c. Threatens to commit immediately any forcible felony."); *id.* § 711.3 ("All robbery which is not robbery in the first degree is robbery in the second degree. Robbery in the second degree is a class 'C' felony.").

"Iowa law requires a court give a requested instruction as long as the instruction is a correct statement of law, is applicable to the case, and is not otherwise embodied elsewhere in the instructions." *State v. Kraai*, 969 N.W.2d 487, 492 (Iowa 2022) (citation omitted). "Jury instructions are designed to explain the applicable law to the jurors so the law may be applied to the facts proven at trial." *State v. Davis*, 988 N.W.2d 458, 466 (Iowa Ct. App. 2022) (quoting *Meck v. Iowa Power & Light Co.*, 469 N.W.2d 274, 276 (Iowa Ct. App. 1991)). However, "[s]ubmission of issues that have no support in the evidence to the jury is error." *Id.* (quoting *Meck*, 469 N.W.2d at 276). "Evidence is substantial enough to support a requested instruction when a reasonable mind would accept it as adequate to reach a conclusion." *Id.* (quoting *Bride v. Heckart*, 556 N.W.2d 449, 452 (Iowa 1996)).

Upon our review, we find the State produced evidence from which the jury could find Sanders threatened Fitzsimmons with immediate serious injury, purposely put Fitzsimmons in fear of immediate serious injury, or threatened to immediately kill Fitzsimmons.[2] Accordingly, there was substantial evidence to support subparagraphs (2)(a) and (2)(b) of the challenged instruction. We

---

[2] As noted above, Fitzsimmons testified he did not see what direction Sanders went after he stole his billfold but he did not call for help because he thought Sanders "would burn the house down" and he was worried about his life and the life of his cat.

conclude the district court did not err in submitting the challenged instruction to the jury.

## IV.  Motion to Continue Sentencing

The jury returned its verdict finding Sanders guilty on all four counts on July 15, 2022.  On July 22, defense counsel filed a motion to withdraw, citing a "breakdown with the attorney-client relationship."  A hearing on the motion took place on August 9.  At the hearing, Sanders stated he was "misled" by his attorney because he "didn't want to go through [trial]" but counsel did not allow him to enter a plea agreement.  Defense counsel "disagree[d]" with Sanders' statements but acknowledged "it might not be the worst idea at this point to have new counsel appointed" because "it's pretty clear right now that [Sanders is] not in favor of me." The State resisted the motion for new counsel, arguing:

> Th[is] case has gone to trial.  It's been to jury.  I think it would be a disadvantage and inefficiency of the Court to appoint new counsel who, in order to file appropriate motions for new trial and other post-trial motions on the defendant's behalf a new attorney would have to get an entire trial transcript and familiarize themselves with the case in order to follow—file the appropriate motions.
>
> Further, I'm not sure what exactly the motion is on the table regarding defendant's statements about his understanding or misunderstanding of the plea deal and what he did and did not want to take, but I do want to note for the record that that plea offer for the defendant was out there at least two months prior to the trial date, each time being re-offered at CMCs.  The defendant rejected that offer.
>
> We did have an extensive plea colloquy on the record prior—prior to trial where the Court specifically asked the defendant if he understood what the plea offer was and if he chose to proceed to trial and let the jury decide, and I quote the defendant's statement was, "Yes, ma'am.  I truly understand the meaning of this, and I choose to go to trial."
>
> So I think it's disingenuous after the fact, after having been found guilty of at least some—on all four counts of the Trial Information that the defendant suddenly claims he did not

understand the plea agreement and wanted to take it when he had ample opportunity to do so.

The court allowed defense counsel to withdraw "without making any ruling" on Sanders's allegations, observing, "I think the transcript will speak for itself regarding that conversation." The court entered an order appointing new counsel to represent Sanders in the instant case as well as another pending case.

On August 10, substitute counsel filed an appearance and request for discovery. At the sentencing hearing on August 26, substitute counsel alerted the district court he entered his appearance "only about two weeks ago" and moved to continue sentencing. The following colloquy ensued:

> DEFENSE COUNSEL: The verdict came back on July 15th of this year. I was appointed and entered an appearance, it appears, on August 10th, so only about two weeks ago. I have not had the opportunity to get sentencing—or excuse me, trial transcripts of this matter in order to fully evaluate a motion for a new trial in this case. Obviously I've spoken with both Mr. Sanders and his former counsel about that, but not having firsthand knowledge of the trial, I do think that that would be necessary in order to fulfill my obligations as an attorney to do a full and fair motion for new trial on Mr. Sanders. And so because of that, Your Honor, I would be requesting a continuance of today's sentencing hearing in order to be able to fully prepare that and put that in front of the Court.
>
> COURT: Thank you, Mr. Johnson. Have you had an opportunity to review the presentence investigation report filed in connection with the jury verdicts in this case?
>
> DEFENSE COUNSEL: That I have, Your Honor. And I reviewed that with Mr. Sanders over at the Linn County Jail. We did not have any corrections.
>
> COURT: Okay. Thank you. As the parties are aware, the Rules of Procedure require that any post-trial motion or specifically a motion in arrest of judgment, which tracks the same time deadlines as would a motion for new trial, must be filed within 45 days after the jury verdict and at least five days before the sentencing hearing. Finding that no such motion has been filed, the Court will proceed with sentencing today rather than continue this matter. So the motion for continuance will be overruled.

On appeal, Sanders challenges the court's denial of his motion to continue sentencing. We review his claim for abuse of discretion. *See State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000).

> A trial judge is required to set a date for the pronouncement of judgment and imposition of sentence within a reasonable time after a verdict of guilty. Any post-trial motions must be heard within thirty days after they are filed, absent good cause. The process does not contemplate unnecessary delay between the verdict of guilty and the entry of judgment and sentence.

*Id.* (citations omitted).

In *Artzer*, the defendant was found guilty of second-degree murder on January 22 and sentencing was set for February 19. *Id.* at 529. On February 11, Artzer "terminated his relationship with his trial attorney and obtained different counsel." *Id.* On February 16, substitute counsel entered an appearance and filed a motion to continue sentencing. *Id.* In addition, Artzer "sought a transcript of the trial to enable his new attorney to prepare additional post-trial motions"; Artzer "believed his trial counsel was ineffective and he wanted time to gather evidence and amend the pending motion for a new trial to allege grounds of ineffective assistance of counsel." *Id.* The district court denied the motion to continue sentencing, finding: Artzer had failed to "establish good cause for a continuance," "the delay in sentencing would be too time consuming and disruptive to an orderly trial process," and "any claim of ineffective assistance of counsel could be raised on appeal or postconviction relief." *Id.*

Artzer challenged the district court's ruling on appeal. The supreme court rejected his claim, "agree[ing] with the sound reasoning of the district court that the symmetry afforded the trial process precludes unnecessary delay in sentencing."

*Id.* at 531. The court further found Artzer "failed to allege any specific error which the transcript would confirm" to support his claim of ineffective assistance of trial counsel and "failed to point to any resulting prejudice." *Id.* In sum, the court concluded "it was unnecessary to prolong the sentencing process for the purpose of injecting claims of ineffective assistance of counsel which could be raised on appeal or in a postconviction relief action." *Id.*

This case is analogous to *Artzer*. Sanders claims he needed additional time to "allow preparation of transcripts in order to properly prepare motions for a new trial and motion in arrest of judgment." Specifically, Sanders maintains "[t]rial transcripts would have revealed grounds for a new trial including that the jury verdicts were contrary to the greater weight of the evidence." He points to inconsistencies in Fitzsimmons's testimony regarding the amounts of money stolen from him and the weather to support his claim.

But "[a]part from the desire to [fully evaluate a motion for new trial], [Sanders's] reasons advanced below for needing a continuance were 'vague and uncertain.'" *State v. Clark*, 814 N.W.2d 551, 562 (Iowa 2012) (quoting *State v. Melk,* 543 N.W.2d 297, 300 (Iowa Ct. App.1995) (finding no abuse of discretion by the district court's denial of a continuance where the defendant failed to identify specific "good and compelling cause" for continuance)). Essentially, substitute counsel "said only that he wanted to conduct more 'investigation.'" *Id.* And Sanders has not demonstrated prejudice resulting from the district court's denial of his motion. *See id.* (noting the defendant "also has made no showing that any information he would have obtained from further investigation would be material to his defense"; accordingly, "[t]here has thus been no demonstration of prejudice

resulting from the trial court's denial of his motion"); *Artzer*, 609 N.W.2d at 531 (same).

Under these circumstances, we cannot find the district court abused its discretion in denying the motion for continuance. There was no good cause alleged to support a delay in sentencing. *Accord* Iowa R. Crim. P. 2.9(2) ("A motion for continuance shall not be granted except upon a showing of good and compelling cause.").[3] We affirm on this issue.[4]

## V. *Waiver of Right to Testify*

During trial, prior to the State's final witness, defense counsel informed the court Sanders "has made the decision not t[o] testify in this case." Sanders now claims he "wanted to take the stand," but defense counsel told him, "Don't." Sanders contends the district court "fail[ed] to conduct a colloquy with [him] to ensure a valid waiver of his right to testify."

However, "the trial court had no duty to address [Sanders] personally concerning his decision not to testify." *State v. Reynolds*, 670 N.W.2d 405, 411 (Iowa 2003) (recognizing defendants can waive their constitutional right to testify and "the trial court has no duty to determine on the record that the defendant has

---

[3] Because the underlying events occurred in November and December 2021, we consider Iowa Rule of Criminal Procedure 2.9 as effective at that time. Updated Iowa Rules of Criminal Procedure became effective on July 1, 2023, which substantively amended rule 2.9.

[4] Sanders argues, "In the alternative, counsel was ineffective for failing to perform his essential duties to properly prepare motions for a new trial and motion in arrest of judgment prior to sentencing, causing prejudice." However, a claim of ineffective assistance can only be raised in a postconviction-relief proceeding. *See* Iowa Code § 814.7; *State v. Rutherford*, 997 N.W.2d 142, 145 (Iowa 2023) (observing section 814.7 "limits the authority of Iowa's appellate courts to resolve ineffective-assistance claims on direct appeal" (citation omitted)).

made a voluntary, knowing, and intelligent waiver of the right to testify at trial"); *see also Schertz v. State*, 380 N.W.2d 404, 415 (Iowa 1985).  We further note "[t]he court did not prevent [Sanders] from exercising his constitutional right to testify—he was given the opportunity as part of the normal course of the proceedings and waived it."  *State v. Bearshield*, No. 23-0143, 2024 WL 4616122, at *2 (Iowa Ct. App. Oct. 30, 2024).  "[I]nsofar as [Sanders] implies he was prevented from testifying by counsel or that counsel waived his right for him without his consent, that issue is better raised as a claim of ineffective assistance, which can only be raised in a postconviction-relief proceeding."  *Id.* n.2.

## VI.    *Conclusion*

Having addressed the issues properly before us on appeal, we affirm Sanders's convictions for assault causing bodily injury, assault with intent to commit serious injury, and two counts of second-degree robbery.

**AFFIRMED.**